UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-103 (MJD/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Anthony Akemu Abari, | |
| Defendant. | |

On April 10, 2019, Defendant Anthony Akemu Abari ("Abari") was indicted on one count of Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and one count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).  (Dkt. 1.)  This matter is before the Court on Abari's Motion to Suppress Statements, Admissions, and Answers (Dkt. 22) and Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 27).  Justin A. Wesley and Amber M. Brennan, Assistant U.S. Attorneys, appeared on behalf of the United States of America and Rick E. Mattox, Mattox Law Office, appeared on behalf of Abari, who was present at the hearing.  The case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

The Court held a hearing on June 5, 2019, at which the Government presented a witness and offered exhibits.  (Dkt. 35.)  Abari filed a post-hearing brief on July 23, 2019

(Dkt. 44) and the Government filed a response brief on July 30, 2019 (Dkt. 45).  For the reasons stated below, the Court recommends the Motions be denied.

## I.     BACKGROUND

On January 24, 2019, Officer Brandon Noble ("Officer Noble") of the Minneapolis Police Department submitted an application for search warrant to search the apartment where Abari was later found (the "target address").  (Ex. 1.)  The target of the search warrant was an individual named Relondo Hall ("Hall"), and there is no mention of Abari in the application.  (Ex. 1 at 2.)  Officer Noble stated in the application that he received information from a confidential informant that Hall was the source of a supply of cocaine at the target address.  (*Id.*)  The confidential informant provided Officer Noble with the Facebook name of Hall, Hall's nickname of "Spade," and a physical description of Hall.  (*Id.* at 3.)

Officer Noble stated that he searched a Minneapolis police records database for the nickname "Spade" and identified Hall.  (*Id.*)  Hall's Minnesota Driver's License Information on Minnesota Vehicle Services ("MVS") website indicated that Hall resembled the description given to Officer Noble.  (*Id.*)  Officer Noble also found the Facebook account was under the Facebook name given by the confidential informant and observed photos that matched Hall's photograph on the MVS website.  (*Id.*)  Officer Noble found photographs on the Facebook account showing large sums of U.S. currency and a photo with an open baggy of what appeared to be marijuana.  (*Id.*)  The Facebook account also included a video with Hall sitting on the toilet holding and fanning a large amount of U.S. currency.  (*Id.*)

On January 21, 2019, Officer Noble received an anonymous tip that someone on the floor of the target address was dealing drugs out of their apartment. (*Id.* at 4.) According to the tipster, "there is a steady stream of different, very questionable looking people who show up at the front door of the apartment building day and night, this guy lets them in, they stay for 5-10 minutes, then they leave.  Last night there was a group of people who all appeared to be in an altered state in the front of the building and this guy let them in one by one and each person left quickly afterwards.  These people are usually very loud and seem like they are on something—not weed, but serious drugs." (*Id.*)  The tipster initially did not know the exact apartment number but called a second time, on January 22, 2019, and provided the apartment unit number, which is the number of the unit targeted by the search warrant. (*Id.*)

On January 22, 2019, on the Facebook account, Officer Noble observed a video of Hall with what appeared to be an automatic pistol with a silencer. (*Id.*)

In the 48 hours preceding Officer Noble's application, his supervisor observed Hall coming and going from the parking lot entrance on the south side of the target address. (*Id.*)

Officer Noble contacted the property manager at the target address and determined that the renter of the apartment unit had put the unit on Airbnb, a website for nightly rental of residences. (*Id.*)  Officer Noble found the unit on Airbnb and determined that the bathroom floor on the Airbnb listing resembled the bathroom floor from a Facebook photograph. (*Id.* at 5.)

Officer Noble also contacted a K-9 officer to conduct a "non-intrusive dog sniff" of the exterior door of the target address. (*Id.*) On January 23, 2019, the K-9 unit dog sniffed the lower seam of the door and indicated that she detected odor of controlled substances. (*Id.*)

Because Officer Noble had seen the Facebook video of Hall with what appeared to be an automatic pistol with a silencer, and Hall had a criminal record for possession of a handgun, Officer Noble requested a no knock search warrant. (*Id.*)

The search warrant was signed by Judge Kristin Stegesmund on January 24, 2019. (*Id.* at 8-10.) A SWAT team with approximately nine officers executed the search warrant at the target address. (Tr. at 29-31.)[1] Upon entering, the SWAT team encountered Abari sitting on the couch in the living area talking on his phone. (*Id.* at 31, 42.) Body cameras worn by a SWAT team officer recorded the encounter with Abari. (Exs. 3, 4.) The officers ordered Abari to the ground and secured him using flex-cuffs. (Tr. at 35.) When the officers rolled Abari over onto his side, they found a cell phone and a pistol. (*Id.* at 38.) Officer Noble testified that the officers also found "a large amount of heroin on the kitchen counter, or what appeared to be heroin." (*Id.* at 42.) Abari was placed under arrest based on the recovery of the heroin and the firearm. (*Id.* at 43.)

---

[1] The transcript of the hearing ("Tr.") is available at Dkt. 42.

## II.   DISCUSSION

**A.   Motion to Suppress Evidence Obtained as a Result of Search and Seizure**

Abari's primary argument is that the search warrant was not supported by probable cause and is not subject to the *Leon* good-faith exception.[2] (Dkt. 44 at 2.) Courts review the affidavit for a search warrant for "facts sufficient to support a finding of probable cause." *United States v. Parker*, 836 F.2d 1080, 1083 (8th Cir. 1987). "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (quoting *United States v. Murphy*, 69 F.3d 237, 240 (8th Cir. 1995) (quoting, in turn, *Gates*, 462 U.S. at 238)).

Here, the Court finds there was at least a fair probability that contraband or evidence of a crime—namely controlled substances or illegal firearms—would be found at the target address. In the application for search warrant, Officer Noble stated that a confidential informant reported that Hall was supplying cocaine from the target address. (Ex. 1 at 2.) The confidential informant also told Officer Noble Hall's Facebook name, Hall's nickname ("Spade"), and Hall's physical description. (*Id.* at 3.) Officer Noble

---

[2]   The Court notes that the Government does not argue that Abari lacks to standing to challenge the search warrant.

verified that the nickname appeared in police records, that the Facebook account contained photographs that match the Driver and Vehicle Services photograph of Hall, and that the Facebook account contained photographs of Hall with large sums of currency and a photograph with marijuana. (*Id.*) Officer Noble also saw a video on the Facebook account of Hall holding what appeared to be an automatic pistol with a silencer. (*Id.* at 4.)

Officer Noble corroborated this information with an anonymous tip on January 21, 2019 that drugs were being dealt from an apartment unit in the same vicinity (same building and floor) as the information from the confidential informant. (*Id.*) The next day, the anonymous tipster provided the apartment unit number. (*Id.*) Officer Noble further corroborated the information he had obtained with a K-9 unit dog sniff and sightings of Hall from his supervisor. (*Id.* at 5.) Officer Noble then determined that the target address was owned by a different individual, who had listed the unit the Airbnb, and Officer Noble identified that the bathroom floor appeared the same as the bathroom floor in the Facebook photograph with Hall. (*Id.*)

Abari also argues the warrant is lacking in probable cause because it relied on anonymous and uncorroborated tips, speculation regarding the similarity in bathroom floors by a police officer, "a reckless disregard for its truth of a minimally described dog sniff on a floor of an apartment building by the University of Minnesota," and a reckless disregard for its truth in assuming that the unit in question was still occupied by Hall. (Dkt. 44 at 2.) As to the information provided by the confidential informant and the anonymous tipster, "[t]he key inquiry in such cases is whether the information is reliable,

6

where "[s]uch reliability can be established through independent corroboration or the informant's track record of providing trustworthy information." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). Here, the information provided by the confidential informant was corroborated by Officer Noble's review of the identified Facebook account and police and MVS records, while the information provided by the anonymous tipster, including the identification of the apartment unit number, was corroborated by the dog sniff. Further, the information provided by the confidential informant and anonymous tipster provided some reciprocal corroboration, in that the confidential informant identified Hall as a source of supply for narcotics at the address of the apartment building in question, and the anonymous tipster reported drug dealing from the first floor of the same building. *See United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998).

Abari argues that because the target address was a short-term rental on Airbnb, Officer Noble's assumption that Hall continued to stay there when he submitted the warrant application on January 24, 2019, was made with a reckless disregard for its truth. (Dkt. 44 at 2.) Abari has not identified any evidence supporting his assertion of reckless disregard for the truth. Further, Officer Noble was acting on recent information including a January 22, 2019 Facebook video, a January 23, 2019 dog sniff, and reported sightings of Hall within the same two days. Based on all of this information, there was certainly a fair probability that controlled substances (cocaine, marijuana, or otherwise) or illegal firearms would be found at the target address on January 24, 2019.

Abari also asserts the warrant lacked probable cause because the supporting affidavit relied on "a reckless disregard for its truth of a minimally described dog sniff." (Dkt. 44 at 2.) Abari did not provide any explanation or reasoning for this assertion. In any event, the Court concludes that there was sufficient probable cause to support the warrant even if the dog sniff were excluded from the affidavit. For all of these reasons, the Court recommends the motion be denied.

The Court also concludes that the good-faith exception in *United States v. Leon*, 468 U.S. 897 (1984) applies. Under *Leon*, "'evidence seized pursuant to a search warrant issued by a [judge] that is later determined to be invalid[] will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable.'" *United States v. Houston*, 665 F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)). In *Leon*, the court stated that "'searches pursuant to a warrant will rarely require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" 468 U.S. at 922 (citations omitted). However, the *Leon* court noted that there are certain instances when "the purpose of the exclusionary rule—deterring police misconduct—will not be served by suppressing illegally seized evidence." *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987); *Leon*, 468 U.S. at 922-23. "When a police officer acts in an objectively reasonable manner in reliance on a subsequently invalidated search warrant, there is no rational reason for suppressing the fruits of the search." *Martin*, 833 F.2d at 755. The Court's "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained

officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 923 n.23.  In this regard, evidence obtained as a result of an unconstitutional search should be suppressed under the following circumstances:

   i.   when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

   ii.  when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;

   iii. when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and

   iv.  when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431).  Relevant factors include, among other things, whether the warrant was issued by an unbiased judge, whether the officer who requested the warrant was the same officer who executed the warrant, whether there was probable cause for the search, whether the application was attached to the warrant, and whether, in the context of the warrant, the officer had a reasonable belief the warrant was limited to the seizure of more particular items.  *See, e.g.*, *Henderson*, 416 F.3d at 695; *Curry*, 911 F.2d at 78.

Abari argues that "[t]he evidence presented to the judge in the affidavit failed to recite any facts indicating that Spade [(Hall)] was the current renter on January 24, 2019, or whoever the current renter was or the actual owner of the residence were currently engaged in any criminal activity on January 24, 2019.  The search warrant affidavit does not show any effort by Officer Noble to contact the owner, at a bare minimum, to see if

9

Unit 110 was available for rent on January 24, 2019." (Dkt. 44.)  According to Abari, this deficiency was made "with reckless disregard for its truth misleading the issuing judge," "the affidavit included so few indicia of probable cause that it was unreasonable for an officer to believe that probable cause existed, and the warrant themselves [sic] are facially deficient so that an officer could not reasonably presume it to be valid," and "the judge wholly abandoned a judicial role in issuing the warrant when the affidavit in support of the warrant was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." (*Id.* at 2-3.)

As discussed above, the Court finds the statements in Officer Noble's application make it probable that evidence or contraband of a crime would be found at the target address on January 24, 2019.  The application described narcotics activity specifically involving Hall at the apartment building in question in January 2019, narcotics activity in an apartment at the same building on February 21 and 22, 2019, the observations of Hall going in and out of the building within the 48 hours before the application was signed on January 24, 2019 at 11:19 a.m., the similarity of the bathroom floor observed by Officer Noble during his review of Hall's Facebook account in January 2019 to the bathroom floor in the Airbnb posting for the target apartment, and a positive dog sniff at the apartment unit in question on January 23, 2019.[3]  There was sufficient probable cause to indicate that there was ongoing narcotics activity at the apartment in question and that evidence of that activity would be found as of January 24, 2019.  *See United States v.*

---

[3]   As noted above, the Court would reach the same conclusion if the dog sniff were excluded.

*Tran*, 339 F. App'x 423, 424 (5th Cir. 2009) ("The facts recounted in the affidavit supported the ongoing nature of the criminal activity at the motel, including within days of the warrant's issuance, and the likelihood that drugs and drug-related documents of a non-ephemeral nature would be found there.  As such, the affidavit was not so lacking in indicia of probable cause as to render good-faith reliance on a warrant issued pursuant to it entirely unreasonable.") (quotation omitted).  Accordingly, the Court does not find that the affidavit was misleading to the judge, that the issuing judge wholly abandoned her judicial role, that the application lacked indicia of probable cause, or that the application was facially deficient.  *See Houston*, 665 F.3d at 995.

As to the other factors relevant in the *Leon* analysis, Abari does not argue that the issuing judge was biased or that the application was not attached to the search warrant. (*See generally* Dkt. 44.)  Abari also does not contest the breadth or particularity of the search warrant in his brief, and in any event, the warrant specifically authorized the search and seizure of narcotics, firearms, cell phones, and money.  (Ex. 1 at 8-9.)  For each of these reasons, the Court recommends that the motion to suppress also be denied under the *Leon* good-faith exception.

**B.     Motion to Suppress Statements, Admissions, and Answers**

Abari's Motion to Suppress Statements, Admissions, and Answers (Dkt. 22) seeks to suppress statements, admissions, or answers as allegedly made in violation of Abari's Fifth and Sixth Amendment rights (*id.* at 1).  After execution of the search warrant, Abari was interviewed by police officers when he was in custody.  (Ex. 6.)  Abari did not address his statements, admissions, or answers in his post-hearing memorandum in

support of his motion to suppress, aside from arguing that "subsequent . . . statements of Mr. Abari were the product of the illegal search" pursuant to the search warrant that Abari contends lacked probable cause. (Dkt. 44 at 4.) To the extent Abari argues his statement should be suppressed as fruit of the poisonous tree, because the Court finds the warrant was supported by probable cause as discussed above, the Court recommends Abari's motion be denied. To the extent Abari argues his statement was not voluntary or made in violation of *Miranda*, he did not raise the issues in his memorandum. Federal Rules of Criminal Procedure 12(b)(3) and (c)(3) provide that motions to suppress evidence must be raised before trial or are waived, and the waiver provision 'applies not only to the failure to make a pretrial motion, but also to the failure to include a particular argument in the motion.'" *United States v. Reynolds*, 720 F.3d 665, 673 (8th Cir. 2013) (quoting *United States v. Spotted Elk*, 548 F.3d 641, 656 (8th Cir. 2008)). "At minimum, it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed." *United States v. Rosetter*, No. 10-cr-83 (JNE/JSM), 2010 WL 5184991, at *23 (D. Minn. Oct. 1, 2010), *R.&R. adopted* 2010 WL 5173155, (D. Minn. Dec. 13, 2010) (citations omitted); *see also United States v. Edwards*, 563 F. Supp. 2d 977, 994 (D. Minn. 2008) (citations omitted) ("At the end of the day, as the moving party, at a minimum it is defendant's burden to come forth with some evidence and argument to support his position that evidence, statements or a witness identification should be suppressed."). "[E]ven in those circumstances where the Government has the ultimate burden of persuasion, Defendant has the initial burden of making a prima facie showing of

illegality." *United States v. Starks*, 193 F.R.D. 624, 628 (D. Minn. 2000) (citation omitted). Abari's failure to affirmatively provide the Court with support for the motion as it relates to the warrant is a sufficient basis for denial of the motion. *See Rosetter*, 2010 WL 5184991, at *23. Accordingly, the Court recommends that Abari's Motion to Suppress Statements, Admissions, and Answers (Dkt. 22) be denied.

In any event, the Court has reviewed the recorded statement of Abari (Ex. 6) and finds that Abari was read his *Miranda* rights and that the statement was voluntary. The Eighth Circuit has described the analysis as follows:

> There are two distinct dimensions to the inquiry whether a suspect's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. First, the waiver must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the suspect must have waived his rights with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. We consider the totality of the circumstances in determining whether a suspect's waiver is valid.

*United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (cleaned up).

In the recording, after the interrogating police officer asked Abari for his name and address, the officer read Abari his *Miranda* rights. (*Id.* at 1:44.) Abari then proceeded to talk to the police. (*Id.* at 2:04.) There is no indication of intimidation, coercion, or deception throughout the recording. The interview lasted approximately thirty-six minutes, which was relatively short. *See Jenner v. Smith*, 982 F.2d 329, 334 (8th Cir. 1993) ("The fact that the questioning extended for six or seven hours is not per se unconstitutionally coercive."). The Eighth Circuit has generally concluded that "where the defendant possessed at least average intelligence, then his inculpatory statements

13

were not compelled." *United States v. LeBrun*, 363 F.3d 715, 726 (8th Cir. 2004). Abari appears to be of average intelligence, further indicating his waiver was voluntary. There are no signs that Abari was intoxicated or impaired during the interview. Based on the totality of the circumstances, the Court concludes that Abari's waiver of his *Miranda* rights was voluntary, knowing, and intelligent. Accordingly, the Court recommends that his motion to suppress be denied.

### III.   RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1. Defendant's Motion to Suppress Statements, Admission, and Answers (Dkt. 22) be **DENIED**.

2. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 27) be **DENIED.**

DATED: August 29, 2019                             *s/Elizabeth Cowan Wright*
                                                   ELIZABETH COWAN WRIGHT
                                                   United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).