# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 19-cr-103 (MJD/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Anthony Akemu Abari (1), | |
| Defendant. | |

On August 29, 2019, this Court issued a Report and Recommendation recommending that Defendant Anthony Akemu Abari's Motion to Suppress Statements, Admissions, and Answers (Dkt. 22) and Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 27) be denied. This matter is now before the Court on Abari's Motion for Reconsideration of the Report and Recommendation (Dkt. 70) and Abari's Motion for a *Franks* Hearing (Dkt. 71). The Motions to Suppress were referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. The Court therefore addresses Abari's Motion for Reconsideration in a report and recommendation, along with Abari's Motion for *Franks* Hearing.[1]

---

[1] After briefing was complete on Abari's Motions for Reconsideration and for a *Franks* Hearing (Dkts. 70-71), Abari filed several new motions in view of the superseding indictment in this case (Dkts. 102-104). The Court will address those motions, and any effect they may have on the validity of the search warrant currently at issue, after the Government has filed its responses, a hearing on those motions, and any post-hearing briefs are filed.

# I.  MOTION FOR RECONSIDERATION

On May 13, 2019, Abari filed a Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Dkt. 27). The Court held a hearing on June 5, 2019, at which the Government presented a witness and offered exhibits. (Dkt. 35.) Abari, through his legal counsel, had the opportunity to cross-examine the witness. Abari filed a post-hearing brief on July 23, 2019 (Dkt. 44), and the Government filed a response brief on July 30, 2019 (Dkt. 45). In his initial memorandum in support of the Motion to Suppress, Abari argued in relevant part:

> The search warrant lacked probable cause to permit a search of Unit 110 because the affidavit submitted in support of the warrant relied on both anonymous and uncorroborated tips, a reckless disregard for its truth of a minimally described dog sniff on a floor of an apartment building by the University of Minnesota, a reckless disregard for its truth in assuming that Unit 110, a short term rental apartment, was still occupied by Spade, and with bathroom floor speculation by a Minneapolis police officer.
>
> The good-faith exception under *Leon* did not apply because it was objectively unreasonable for the experienced police officer Brandon Noble to present to a judge an affidavit to search a short term rental with stale and vague probable cause that included only uncorroborated information obtained from anonymous informant, from an anonymous tipster, and from Officer Noble's speculative guess comparing bathroom floors.
>
> The good-faith exception also does not apply when Officer Noble in the affidavit in support of the warrant included a false statement made knowingly and intentionally or with reckless disregard for its truth misleading the issuing judge.
>
> * * *
>
> The evidence presented to the judge in the affidavit failed to recite any facts indicating that Spade was the current renter on January 24, 2019, or whoever the current renter was or the actual owner of the residence were currently engaged in any criminal activity on January 24, 2019. The search warrant affidavit does not show any effort by Officer Noble to contact the

2

owner, at a bare minimum, to see if Unit 110 was available for rent on
January 24, 2019.

(Dkt. 44 at 2-4.)  Abari **did not** argue that the dog sniff outside of Unit 110, an Airbnb short term rental, was improper under the Fourth Amendment because the supporting warrant affidavit from Officer Noble did not contain the record of the dog conducting the sniff or that such a dog sniff requires a search warrant.  Instead, Abari contended generally that the search warrant was deficient because it was based on an unexplained "reckless disregard for its truth of a minimally described dog sniff on a floor of an apartment building. . . ."  (*Id.* at 2.)

In its Report and Recommendation, the Court held as follows on the Motion to Suppress:

> Here, the Court finds there was at least a fair probability that contraband or evidence of a crime—namely controlled substances or illegal firearms—would be found at the target address.  In the application for search warrant, Officer Noble stated that a confidential informant reported that Hall was supplying cocaine from the target address.  (Ex. 1 at 2.)  The confidential informant also told Officer Noble Hall's Facebook name, Hall's nickname ("Spade"), and Hall's physical description.  (*Id.* at 3.)  Officer Noble verified that the nickname appeared in police records, that the Facebook account contained photographs that match the Driver and Vehicle Services photograph of Hall, and that the Facebook account contained photographs of Hall with large sums of currency and a photograph with marijuana.  (*Id.*)  Officer Noble also saw a video on the Facebook account of Hall holding what appeared to be an automatic pistol with a silencer.  (*Id.* at 4.)
>
> Officer Noble corroborated this information with an anonymous tip on January 21, 2019 that drugs were being dealt from an apartment unit in the same vicinity (same building and floor) as the information from the confidential informant.  (*Id.*)  The next day, the anonymous tipster provided the apartment unit number.  (*Id.*)  Officer Noble further corroborated the information he had obtained with a K-9 unit dog sniff and sightings of Hall from his supervisor.  (*Id.* at 5.)  Officer Noble then determined that the target address was owned by a different individual, who had listed the unit the

3

> Airbnb, and Officer Noble identified that the bathroom floor appeared the same as the bathroom floor in the Facebook photograph with Hall. (*Id.*)
>
> Abari also argues the warrant is lacking in probable cause because it relied on anonymous and uncorroborated tips, speculation regarding the similarity in bathroom floors by a police officer, "a reckless disregard for its truth of a minimally described dog sniff on a floor of an apartment building by the University of Minnesota," and a reckless disregard for its truth in assuming that the unit in question was still occupied by Hall. (Dkt. 44 at 2.) As to the information provided by the confidential informant and the anonymous tipster, "[t]he key inquiry in such cases is whether the information is reliable where "[s]uch reliability can be established through independent corroboration or the informant's track record of providing trustworthy information." *United States v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016). Here, the information provided by the confidential informant was corroborated by Officer Noble's review of the identified Facebook account and police and MVS records, while the information provided by the anonymous tipster, including the identification of the apartment unit number, was corroborated by the dog sniff. Further, the information provided by the confidential informant and anonymous tipster provided some reciprocal corroboration, in that the confidential informant identified Hall as a source of supply for narcotics at the address of the apartment building in question, and the anonymous tipster reported drug dealing from the first floor of the same building. *See United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998).
>
> Abari argues that because the target address was a short-term rental on Airbnb, Officer Noble's assumption that Hall continued to stay there when he submitted the warrant application on January 24, 2019, was made with a reckless disregard for its truth. (Dkt. 44 at 2.) Abari has not identified any evidence supporting his assertion of reckless disregard for the truth. Further, Officer Noble was acting on recent information including a January 22, 2019 Facebook video, a January 23, 2019 dog sniff, and reported sightings of Hall within the same two days. Based on all of this information, there was certainly a fair probability that controlled substances (cocaine, marijuana, or otherwise) or illegal firearms would be found at the target address on January 24, 2019.

(Dkt. 54 at 5-7.) The Court also concluded that the search warrant was supported by probable cause even excluding the evidence of the positive dog sniff alert. (Dkt. 54 at 8, 10 n.3.)

4

In his Motion for Reconsideration, Abari argues:

- The dog sniff of the secured apartment hallway by using a key[2] the day before the execution of the search warrant was unconstitutional under *Florida v. Jardines*, 133 S. Ct. 1409 (2013). (Dkt. 70 at 2.)

- Officer Noble was not truthful about the qualifications of the dog to the state court issuing the search warrant, specifically the dog's alleged false positive rate as set forth in *United States v. Ferguson*, Criminal No. 17-204 (JRT/BRT). (*Id.* at 2-3.)

- The search warrant lacked probable cause to permit a search of Unit 110 because the affidavit submitted in support of the warrant relied on both anonymous and uncorroborated tips. (*Id.* at 3.)

- The evidence presented to the judge in the affidavit failed to recite any facts indicating that Spade was the current renter on January 24, 2019, or whoever the current renter was or the actual owner of the residence were currently engaged in any criminal activity on January 24, 2019. (*Id*. at 7.) To this end, Abari asserts that the search warrant affidavit does not show any effort by Officer Noble to contact the owner, at a bare minimum, to see if Unit 110 was available for rent on January 24, 2019. (*Id*. at 7.)

- The state criminal complaint issued after the execution of the search warrant falsely asserts that Abari owned the apartment. (*Id*. at 7-8.)

- The good-faith exception under *Leon* did not apply because it was objectively unreasonable for the experienced Officer Noble to present to a judge an affidavit to search a short term rental with stale[3] and vague

---

[2] There is no evidence in the record supporting Abari's assertion that officers used a key to access a secured hallway to get to Unit 110; only that the entrance to the apartment building required a key. (Govt. Ex. 1 at 4.) The property manager also provided the officers with a key to Unit 110. (*Id.*)

[3] While Abari claims that the search warrant was based on stale information, as this Court has previously found, Officer Noble was acting on recent information including a January 22, 2019 Facebook video, a January 23, 2019 dog sniff, and reported sightings of Hall within the same two days. (Dkt. 54 at 7.) The Court concludes that the information contained in the affidavit regarding the ongoing narcotics investigation related to Unit 110 was not stale. *See United States v. Smith*, 266 F.3d 902, 905 (8th Cir. 2001) ("In investigations of ongoing narcotic operations, intervals of weeks or months between the

probable cause that included only uncorroborated information obtained from anonymous informant, from an anonymous tipster, and from Officer Noble's speculative guess comparing bathroom floors. (*Id.* at 4.)

- The good-faith exception also does not apply when Officer Noble in the affidavit in support of the warrant included a false statement about the "dog sniff" made knowingly and intentionally or with reckless disregard for its truth misleading the issuing judge. (*Id.* at 4.)

**A.     Legal Standard**

While not set forth in the Rules of Criminal Procedure or the Local Rules of this District, courts may consider motions for reconsideration in criminal cases. *See United States v. Dieter*, 429 U.S. 6, 8-9 (1976) (per curiam) (suggesting in dicta that courts may properly consider motions for reconsideration in criminal matters). However, the District of Minnesota already has in place a method by which to challenge the legal and factual findings set forth in the Court's Report and Recommendation. Specifically, Local Rule 72.2(b) provides that "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition." Local Rule 72.2(b). Here, Abari has not only filed the instant Motion for Reconsideration, but he also filed on the same day Objections to the Report and Recommendation, which will be decided by United States District Judge Michael J. Davis. (Dkt. 72.) The arguments set forth in those Objections in large part incorporate those that form the basis of the Motion for Reconsideration. (*Compare* Dkt. 70, *with* Dkt. 72)

---

last described act and the application for a warrant [does] not necessarily make the information stale.").

6

Neither party addresses the legal standard applicable on a motion for reconsideration of report and recommendation on a motion to suppress. The Court declines to identify the standard here, because the Court would deny the Motion for Reconsideration under any standard of review. *See United States v. Wiley*, No. CR. 09-239 (JRT/FLN), 2010 WL 1027810, at *1 n.2 (D. Minn. Mar. 17, 2010). The Court notes, however, that in deciding whether to reconsider a suppression ruling, courts have considered the party's explanation as to why a particular argument could not have been raised earlier. *See United States v. Chavez Loya*, 528 F.3d 546, 555 (8th Cir. 2008).

**B.     Analysis**

The arguments in Abari's Motion for Reconsideration, save for those pertaining to the dog sniff in the hallway outside of Unit 110, were raised in his initial memorandum in support for his Motion for Suppression and were addressed by the Court's Report and Recommendation. Abari's remedy as to those arguments is to seek review by Judge Davis through his Objections, which he has done. (*See* Dkt. 72.) Accordingly, the undersigned declines to revisit its recommendation as to the arguments now before Judge Davis. That said, the Court recognizes that Abari has filed several new motions (Dkts. 102-104) in view of the August 13, 2019 Superseding Indictment in this case (Dkt. 48)[4], including a *Franks* challenge allegedly related to the Confidential Reliable Informant relied upon the April 14, 2019 search warrant affidavit (Dkt. 104), the merits of which

---

[4]     The Superseding Indictment was unsealed on September 20, 2019. The Government was ordered to provide Abari's counsel with a redacted Superseding Indictment on or before September 3, 2019. (Dkt. 55.)

7

will be addressed by a separate Report and Recommendation.  As it relates to the dog sniff outside of the apartment referenced in the search warrant at issue (Govt. Ex. 1), Abari has never before argued that the dog sniff in the apartment hallway was unconstitutional under the Supreme Court's 2013 decision in *Florida v. Jardines*.[5]  Nor did Abari argue with any specificity that Officer Noble was not truthful about the qualifications of the dog to the state court judge who issued the search warrant, specifically the dog's purported false positive rate as set forth in the 2018 decision in *United States v. Ferguson*, Criminal No. 17-204 (JRT/BRT).  These arguments have also been raised in his Objections to Judge Davis.  (Dkt. 72 at 3-4.)  Because the legal authority and facts underpinning these arguments were available to Abari when he brought his initial Motion to Suppress, and Abari has provided no explanation for not raising them in that motion, the Court could deny the Motion for Reconsideration on this basis alone.

However, given the rights at issue and in view of the fact that the Federal Rules of Criminal Procedure 12(b)(3) and (c)(3) provide that motions to suppress evidence must be raised before trial, the Court will briefly address the merit of these arguments.

The Court's analysis of Abari's *Jardines* argument is hindered by the paucity of evidence regarding the dog sniff and the hallway where the dog sniff occurred resulting from Abari's failure to raise this issue in connection with his Motion to Suppress.  In any event, to the extent that a search warrant was necessary for the dog sniff outside of the

---

[5]   In addition, Abari did not elicit any testimony at the hearing on the suppression motions regarding the details of the dog sniff.

8

Airbnb rental unit or to the extent that the evidence of the dog sniff should be excluded from the search warrant application under *Franks* (discussed below), this Court has already concluded that the search warrant was supported by probable cause even without the evidence of the positive dog sniff alert. (Dkt. 54 at 8, 10 n.3.) In view of this fact, and because Abari has also made his *Jardines* and probable cause arguments in his Objections pending before Judge Davis, the Court denies Abari's motion for reconsideration as to the dog sniff. However, nothing in this decision should preclude Abari from eliciting testimony from witnesses at the upcoming motions hearing on the Superseding Indictment, including Officer Noble, regarding the details of the dog sniff and hallway and renewing his motion to suppress to assert an argument under *Florida v. Jardines* to the extent that it is warranted in light of his new motion in which he may be challenging the validity of the search warrant based on information contained in discovery produced in connection with the Superseding Indictment. (*See* Dkt. 104.)

## II.  **MOTION FOR FRANKS HEARING**

The Defendant requests a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), to demonstrate that Officer Noble knowingly and intentionally, or with reckless disregard for the truth, included a false statement in the warrant affidavit, and that without the false statement, the affidavit would not have established probable cause. (Dkt. 71 at 1.)

"To obtain a *Franks* hearing, a defendant must make 'a substantial preliminary showing' that an affidavit contains an intentional or reckless false statement or omission necessary to the probable cause finding." *United States v. Bradley*, 924 F.3d 476, 481 (8th Cir. 2019) (quoting *United States v. Charles*, 895 F.3d 560, 564 (8th Cir. 2018)).

"This substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements." *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). "Because a warrant application need only show facts establishing probable cause, reckless disregard for the truth may be inferred from the omission of information from an affidavit only when the material omitted would have been clearly critical to the finding of probable cause." *United States v. Carnahan*, 684 F.3d 732, 735 (8th Cir. 2012) (cleaned up).

Here, Abari does not attack the procedure used in the dog sniff outside of the Airbnb unit. Instead, he asserts that Officer Noble was not truthful about the qualifications of the dog to the state court issuing the search warrant, specifically the dog's reliability as set forth in the 2018 decision in *United States v. Ferguson*, Criminal No. 17-204 (JRT/BRT). (Dkt. 71 at 2-3.) In support of this argument, Abari relies on the following excerpt from a decision by Chief United States District Judge John R. Tunheim involving the same dog, who is named "Whinny":

> Meyer has worked with the airport police since 1990, became a narcotics K-9 handler in 1997, and became a K-9 trainer in 2005. He has been trained in handling K-9s and in narcotics interdiction. He also teaches parcel interdiction and trains law enforcement agencies in the use of K-9s. Meyer has handled four dogs since becoming a K-9 handler and has been handling Whinny for about three years.
>
> Whinny is certified by the United States Police Canine Association to detect narcotics, including marijuana, cocaine, crack, heroin, methamphetamine, ecstasy, mushrooms, and opium. Whinny has been consistently certified since 2015. Certification involves showing that the dog can find narcotics hidden in several locations inside a house and in several cars during a timed test that lasts less than 30 minutes. In Meyer's opinion, Whinny's reliability is above average because she is generally able to find narcotics and generally does not falsely alert. She has falsely alerted in the past, as do all narcotics

10

> dogs, but Meyer opines that Whinny's false alerts are "within an acceptable tolerance." Whinny's errors are not reported to certification authorities; Meyer is the only person who keeps track of them. In the past, she has given false indications on boxes touched by Meyer or another handler. She falsely reported on a box touched by another handler in January of 2017, which Meyer attributed to "handler error." Whinny also had about a month of false reporting problems in May of 2016. Meyer noted that these issues were with "hides," or hidden locations in a room, not parcels.

*United States v. Ferguson*, No. CR 17-204 (JRT/BRT), 2018 WL 582475, at *2 (D. Minn. Jan. 29, 2018) (citations omitted). However, Abari does not address Chief Judge Tunheim's ultimate ruling as it relates to Whinny's search:

> **The parties do not dispute that Whinny is certified by the United States Police Canine Association to detect narcotics, including methamphetamine**. Thus, the Court presumes that Whinny's alert provided probable cause to search. The question is whether Ferguson has overcome this presumption. He has not. Ferguson does not contest the adequacy of Whinny's certification program. He instead focuses on the "problematic nature of the procedure involved" and alleges that "Whinny was prone to make false alerts when the subject package had been handled by her handler."
>
> Regarding the procedure, Ferguson essentially argues that, because Meyer did not use gloves, the package in question was contaminated with his scent. Even though Meyer touched other boxes, Ferguson argues that the subject package was the "most contaminated" because it was handled more than the other boxes that he touched. The Magistrate Judge found that "there is no basis to suggest that a box can be more or less contaminated based on the amount of time or the manner in which a package is touched." Ferguson argues that common sense tells us the opposite: that "an object becomes more contaminated with an odor the longer or closer it is in contact with the odor." This dispute is not dispositive. While there is some evidence that Whinny had falsely alerted based on Meyer or another handler's scent in the past, Meyer testified that touching other boxes fixed the problem. The fact that Meyer used a procedure that he knew had prevented false alert problems in the past suggests that there was nothing improper about the procedure as performed on April 28, 2017. Ferguson has not overcome the presumption of reliability of Whinny's alert.
>
> Ferguson also fails to overcome the presumption of reliability of Whinny's alert based on her "false-alert issue." Meyer testified that Whinny's

11

> reliability is "above average" because Whinny is generally able to find narcotics and not falsely alert, and that her mistakes are "within an acceptable tolerance." While Ferguson pointed to a few issues with false alerts and some "falsing issues" that lasted about a month in May of 2016, Meyer reported that those issues were worked out. He also noted that the month-long falsing issue was not related to parcels and attributed it to handler error. Meyer reported that Whinny has not had long-term or chronic falsing issues with parcels. Ferguson's evidence of Whinny's falsing issues is not sufficient to overcome the presumption of reliability that stems both from Whinny's certification and training and from the totality of the circumstances surrounding her alert.

*Id.* at *7-9 (emphasis added) (citations omitted).

There is nothing from the *Ferguson* decision suggesting that Officer Noble omitted anything material to the finding of probable cause for the issuance of the search warrant in this case. First, because Whinny is certified, at least as of January 2018, it is presumed that Whinny's alert provided probable cause to search. Indeed, the Supreme Court has concluded that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." *Fla. v. Harris*, 568 U.S. 237, 246 (2013). Abari has provided no evidence to suggest that Whinny was not certified at the time of the search in this case. Second, the information available to the Court, based on Chief Judge Tunheim's decision, is that Whinny's reliability was above average because she was generally able to find narcotics and generally does not falsely alert. Third, any errors by Whinny were handler related and had been resolved. *See Ferguson*, 2018 WL 582475, at *9. In sum, Abari has not made the requisite

12

substantial showing that Officer Noble made a reckless omission as to Whinny's qualifications in his search warrant affidavit.[6]

In addition, the Court finds that suppression would not be warranted even if the warrant contained a false omission related to Whinny's reliability. In *Franks*, the Supreme Court held that, when evaluating whether a warrant application containing the false statements of an affiant is supported by probable cause, the appropriate course is to strike the offending statements, and if the remaining truthful statements support probable cause, the warrant will be upheld. *See United States v. Madrid*, 152 F.3d 1034, 1039 n.6 (8th Cir. 1998) (citing *Franks*, 438 U.S. at 171-72). As set forth above, and in the Court's Report and Recommendation, based on the record before the Court, the Court concludes that the issuance of the search warrant at issue (Govt. Ex. 1) was supported by sufficient probable cause even excluding the positive dog sniff.

For all these reasons, Abari's motion for a *Franks* hearing should be denied.

---

[6] Abari again relies on what he claims is a false statement under oath by Officer Noble in the state court complaint, which represented that Abari was the target of the search warrant and that he resided at the Airbnb at issue. (Dkt. 71 at 4.) However, it unclear why Abari thinks the allegedly false statement in the state court complaint is relevant to the warrant. The Court finds that any incorrect statement in the subsequent criminal complaint does not bear on the veracity of the facts contained in his search warrant affidavit.

### III.   RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1. Defendant Anthony Akemu Abari's Motion for Reconsideration of the Report and Recommendation (Dkt. 70) be **DENIED**.

2. Defendant Anthony Akemu Abari's Motion for a Franks Hearing (Dkt. 71) be **DENIED**.

DATED: October 1, 2019             *s/Elizabeth Cowan Wright*
                                   ELIZABETH COWAN WRIGHT
                                   United States Magistrate Judge

### NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).