## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,                    Case No. 19-cr-103 (MJD/ECW)

        Plaintiff,

      v.                                    **REPORT AND RECOMMENDATION**

ANTHONY AKEMU ABARI (1),
RELONDO DEVON HALL (2) and
KEVIN GREEN (3),

        Defendants.

This matter is before the Court on Defendant Kevin Green's Motion to Suppress the Search Warrant at XXXX, Burnsville, MN on July 8, 2019 (Dkt. 89); Defendant Kevin Green's Motion for Suppression of Evidence Obtained by Means of Electronic Surveillance (Dkt. 99); Anthony Akemu Abari's Second Motion for a Franks Hearing (Dkt. 104); Defendant Kevin Green's self-styled Amended Information with Respect to Defendant's Motion to Suppress the Warrant of July 8, 2019 (Dkt. 141); Defendant Kevin Green's Motion for Suppression of Evidence Obtained by Means of Electronic Surveillance Document 99 (Dkt. 158); Defendant Kevin Green's Motion to Suppress the Search Warrant at XXXX, Burnsville, MN on July 8, 2019 Document 89 (Dkt. 166); and Defendant Kevin Green's Motion to Suppress the Arrest of Mr. Green on July 8, 2019 (Dkt. 172).  Defendant Relondo Devon Hall has requested to join all motions.[1]  (Dkt.

---

[1]     Hall filed several pretrial motions, including a Motion to Suppress Physical Evidence and Request for Franks Hearing (Dkt. 117).  The Court held a hearing on Hall's motions (along with several other motions brought by Hall and his co-defendants) on

180.)  The Court grants Hall's request.[2]  This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

Justin A. Wesley and Amber M. Brennan, U.S. Attorney's Office, appeared on behalf of the United States of America ("the Government"); Rick E. Mattox appeared on behalf of Defendant Anthony Akemu Abari, who was present at the hearing; Paul W. Rogosheske appeared on behalf of Defendant Kevin Green, who was present at the hearing; and Bruce Rivers appeared on behalf of Defendant Relondo Devon Hall, who was present at the hearing.

---

December 4, 2019, at which Justin A. Wesley and Amber M. Brennan, Assistant U.S. Attorneys, appeared on behalf of the United States of America and Bruce Rivers, Esq., appeared on behalf of Hall, who was present at the hearing.  (Dkts. 143, 144.)  At the December 4, 2019 hearing, the Court took Hall's Motion to Suppress Physical Evidence and Request for Franks Hearing (Dkt. 117) under advisement pending possible additional disclosures by the Government and additional briefing by the parties.  (Dkt. 144 at 10-11.)  The Court required Hall and the Government to meet and confer to determine whether those three motions necessitated a ruling and set a deadline for Hall to file supplemental briefs of December 18, 2019.  (Dkt. 151 at 55:24-56:1, 56:9-19; *see* Dkt. 144 at 10-11.)  The Court ordered that: "If Defendant [Hall] does not file a supplemental brief by December 18, 2019, the Court will deem the Motion[s] withdrawn."  (Dkt. 144 at 10-11; *see* Dkt. 151 at 55:24-56:1, 56:9-19.)  Hall did not file any supplemental briefs. Accordingly, the Court deems Hall's Motion to Suppress withdrawn, and recommends its denial as moot.  However, the Court will grant Hall's March 12, 2020 request to "join in on all motions" of his co-defendants.  (Dkt. 180.)

[2]      The Government objected to Hall joining in Green's Motion to Suppress the July 8, 2019 Search Warrant (Dkt. 89) and Motion for Suppression of Evidence Obtained by Means of Electronic Surveillance (Dkt. 99).  (Dkt. 181 at 1-2.)  Because the Court recommends denial of those motions, the Court does not reach the issue of Hall's standing.

## I.    DEFENDANT KEVIN GREEN'S MOTIONS TO SUPPRESS THE JULY 8, 2019 SEARCH WARRANT (DKTS. 89, 141, AND 166)

Before the Court are Defendant Kevin Green's Motion to Suppress the Search Warrant at XXXX, Burnsville, MN on July 8, 2019 (Dkt. 89); Defendant Kevin Green's self-styled Amended Information with Respect to Defendant's Motion to Suppress the Warrant of July 8, 2019 (Dkt. 141) ("Amended Information"); and Defendant Kevin Green's Motion to Suppress the Search Warrant at XXXX, Burnsville, MN on July 8, 2019 Document 89 (Dkt. 166).

The Amended Information attached a purported April 24, 2019 receipt from Cadillac Pawn, which Green asserts demonstrates that he was in Minneapolis on April 24, 2019, at the pawn shop, and therefore could not have been in Chicago as asserted in the July 8, 2019 Search Warrant Affidavit. (Dkt. 141.)  In addition, the Amended Information attached a repair bill for a 2004 Porsche indicating that the vehicle was towed on March 4, 2019, which Green claims shows was it was inoperable. (*Id.*)  Green also claimed that he would present the testimony of his mother, Cheryl Green, that he was not in Chicago, Illinois on April 6th, 7th, 24th, or 25th, as asserted in the July 8, 2019 Search Warrant Affidavit. (*Id.*)  Cheryl Green did not appear to testify at the December 4, 2019 hearing.

At the December 4, 2019 hearing, the Court instructed Green to file a supplemental brief in support of his motion to suppress.  In his subsequent Motion/Memorandum in support of suppression of the July 8, 2019 Search Warrant (Dkt. 166), Green argues for a *Franks* hearing.  Green also asserts that the search warrant lacks

3

probable cause and is not subject to the *Leon* good-faith exception.  The Court will
address each of these arguments in turn.

Green asserts that a *Franks* hearing regarding the July 8, 2019 Search Warrant
Affidavit ("July 2019 Affidavit"), related to the residence at issue (hereinafter referred to
as the "Burnsville Residence"), which was the subject of the July 8, 2019 Search Warrant
("July 2019 Search Warrant"), is necessary based on the following:[3]

- Omitted information regarding the *Scales* interview,[4] such as the name
  of the individual interviewed by law enforcement, indicia of reliability,
  their criminal history, the circumstances of the interview, or whether
  they were shown a picture of Green in order to identify "Stunna" as
  Green.  (Dkt. 166 at 4.)  In addition, law enforcement never had the
  individual call the 612-265-XXXX number.  (*Id.*)

- A one-digit discrepancy in July 2019 Affidavit in a telephone number
  allegedly associated with Green, namely that the Affiant stated that the
  *Scales* interviewee informed him that he used the phone number of 612-
  265-XXXX to contact Stunna to arrange the mobile sale of narcotics.
  Green claims that the remainder of the July 2019 Affidavit and "all
  other search warrant applications" at issue in this case listed 612-263-

---

[3]    Green's counsel filed what appears to be a pro se "Addendum" submitted "on
behalf of Defendant Green" on March 18, 2020 (Dkt. 182) setting forth what appear to be
additional arguments in support of his request for a *Franks* hearing.  Green mailed a copy
of this submission (Dkt. 185) along with other pro se submissions (all entitled
"Addendum") to the Court (Dkts. 184, 186).  The Court will not consider these late
submissions because "'[i]t has long been Eighth Circuit policy 'that when a party is
represented by counsel, we will not accept pro se briefs for filing.'"  *United States v.
Hunter*, No. CR 12-185(3) ADM/FLN, 2016 WL 6915506, at *3 (D. Minn. Nov. 22,
2016) (quoting *United States v. Hunter*, 770 F.3d 740, 746 (8th Cir. 2014), quoting
*United States v. Payton*, 918 F.2d 54, 56 n.2 (8th Cir. 1990), *cert. denied*, 502 U.S. 948
(1991)).

[4]    In *State v. Scales*, 518 N.W.2d 587 (Minn. 1994), the Minnesota Supreme Court
announced a new law requiring that all custodial interrogations, including any
information about rights, any waiver of those rights, and all questioning be electronically
recorded where feasible and must be recorded when questioning occurs at a place of
detention.  518 N.W.2d at 592.

XXXX  as the phone number obtained by the Scales interviewee as
associated with Green.  (Dkt. 166 at 3-4.)

- With respect to the Porsche mentioned in the July 2019 Affidavit,
  Green, relying on a receipt from a repair shop (Dkt. 141-1, Ex. 1) and a
  December 16, 2019 email from the repair shop saying that they could
  not say if the Porsche was picked up on March 4, 2019, argues that the
  "rose-colored Porsche was likely in the shop for service/pick-up on
  March 4, 2019 when it is alleged by CRI that 'Stunna' delivered
  narcotics to Mooney out of the Porsche."  (Dkt. 166 at 4 (emphasis
  added).)

- With respect to the van, license #BREXXX, referred to in the July 2019
  Affidavit, Green's mother submitted a December 14, 2019 Affidavit
  claiming that she had in her possession the van registered to Minnie
  Lloyd as #BREXXX in Chicago on February 28, 2019, which Green
  claims shows a careless disregard for the truth by the Affiant.  (Dkt. 166
  at 4-5 (citing Dkt. 166-1, Ex. 5).)

- That the July 2019 Search Warrant was signed by the authorizing judge
  after Green was arrested on the same date.  (Dkt. 166 at 5.)  Green
  claims there is no video showing the time of his arrest.  (*Id.*)

- The claim that the Affiant Officer Jason Schmitt ("Officer Schmitt")
  represented in a separate July 1, 2019 search warrant application for two
  of Green's alleged vehicles that the search warrant for the Burnsville
  Residence (that is the subject of the July 2019 Search Warrant) had
  already been issued.  (Dkt. 166 at 5 (citing Dkt. 166-1, Ex. 7).)

- Letters dated December 2019 from Tiera Ligon and Brenda Turner
  contesting the facts in the July Affidavit. (Dkt. 166 at 5 (citing Dkt. 166-
  1, Exs. 7 and 8).)

- The earlier June 11, 2019 Search Warrant Affidavit by Officer Schmitt
  seeking the installation and use of a pen register, trap and trace devices,
  electronic tracking, and/or cellular tower location for telephone number
  612-219-XXXX, in which Officer Schmitt asserts that the information
  from the Scales interviewee was the 612-219-XXXX number, as
  opposed to the 612-263-XXXX number listed in the July 2019
  Affidavit, was used to arrange for the mobile sale of narcotics from
  "Stunna".  (Dkt. 166 at 6 (citing Dkt. 166-1, Ex. 10).)  Green also
  argues that the June 11, 2019, Search Warrant Affidavit first claims that

the 612-219-XXXX was used by Green and then asserts that it was used
by an alleged co-conspirator Minnie Loyd ("Loyd"). (*Id.*) Green
further asserts that the June 11, 2019, Search Warrant Affidavit goes on
to falsely state that the 612-219-XXXX number was used by Loyd to
rent a Maserati on June 10, 2019, when the information from the rental
agency was that the 612-219-XXXX phone number was not the phone
number used to rent the Maserati in June. (*Id.*)

Pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant may seek a

hearing to challenge a search warrant on the ground that the supporting affidavit contains

factual misrepresentations or omissions relevant to the probable cause determination. *See*

*United States v. Daigle*, 947 F.3d 1076, 1084 (8th Cir. 2020). "'However, in order to

merit a *Franks* hearing, a defendant must show both (1) that the affiant 'knowingly and

intentionally' made false statements or made them in 'reckless disregard for the truth'

and (2) if the false information is excised (or the omitted information is included), the

affidavit no longer establishes probable cause.'" *Id.* (cleaned up) (quoting *United States*

*v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013), quoting *Franks*, 438 U.S. at 155-56). This

"requirement is not met lightly and requires a defendant to offer specific allegations

along with supporting affidavits or similarly reliable statements." *United States v.*

*Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015) (citation omitted); *see also Franks*, 438 U.S.

at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be

furnished, or their absence satisfactorily explained."); *United States v. Mathison*, 157

F.3d 541, 548 (8th Cir. 1998) ("A mere allegation standing alone, without an offer of

proof in the form of a sworn affidavit of a witness or some other reliable corroboration, is

insufficient to make the difficult preliminary showing [under *Franks* ]."). Moreover, "[a]

*Franks* hearing must be denied unless the defendant makes a **strong** initial showing of

deliberate falsehood or reckless disregard of the truth." *United States v. Freeman*, 625 F.3d 1049, 1052 (8th Cir. 2010) (internal quotations and citation omitted) (emphasis added).

A.      **Information Regarding the *Scales* Interview**

As set forth above, Green argues that Officer Schmitt recklessly omitted information to intentionally mislead the issuing judge regarding the *Scales* interview, such as the name of the individual interviewed by law enforcement, their criminal history, any indicia of reliability, the circumstances of the interview, whether the interviewee was shown a picture of Green in order to identify "Stunna" as Green, and that Officer Schmitt never had the interviewee call the 612-265-XXXX number. (Dkt. 166 at 4.) The portion of the July 2019 Affidavit at issue is as follows:

> On January 31, 2019, your affiant learned of a narcotics dealer who uses the street name of "Stunna". The information was obtained via a SCALES Interview during the course of a narcotics investigation. Stunna was said to be a large-scale supplier of Heroin. During the interview, the arrested party stated they had been in a Porsche SUV with Stunna and purchased 100 grams of heroin from Stunna. This arrested party said that Stunna often drives a Porsche SUV that was rose in color. The arrested party used the phone number of 612-265-XXXX to contact Stunna and arrange for the mobile sale of narcotics.

(Gov't Ex. 7.)

As a starting point, it is not essential that an affiant aver that an informant was previously reliable. *See United States v. Harris*, 403 U.S. 573, 581-82 (1971) ("To be sure there is no averment in the present affidavit, as there was in *Jones*, that the informant had previously given 'correct information,' but this Court in *Jones* never suggested that an averment of previous reliability was necessary. Indeed, [] the inquiry is, as it always

must be in determining probable cause, whether the informant's present information is truthful or reliable."). Nor is it necessary that the affidavit identify the name of the informant. *Id.* at 584-85 ("Nor it is especially significant that neither the name nor the person of the informant was produced before the magistrate."). As such, the fact that there was no mention of the reliability or identity of the *Scales* interviewee is not determinative as to probable cause. Therefore, a *Franks* hearing on this issue is not appropriate.

Moreover, the Eighth Circuit has rejected the contention that a *Franks* hearing is necessary where the criminal history of the informant is not provided in a search warrant affidavit or omits the circumstances of the interview, as judicial officers understand that confidential informants are not model citizens and are aware of the possibility that they may be seeking leniency for his or her own situation. *See United States v. Hall*, 171 F.3d 1133, 1143 (8th Cir. 1999) (citations omitted).

Further, any failure to show the *Scales* interviewee a picture of Green in order identify "Stunna" as Green, or have the individual call the 612-265-XXXX number, goes to probable cause. In other words, there is no assertion in the affidavit that the *Scales* interview identified Green, so as to make these purported omissions relevant to a *Franks* analysis. In any event, these alleged omissions are irrelevant, as Officer Schmitt in the next paragraph indicated that he corroborated the information provided by the interviewee by identifying "Stunna" as Green and linking Green to the telephone number and the subject Burnsville Residence:

Your affiant found a Facebook page with the username of "Chuck Green"

8

with the tag line of "King Stunna". The Facebook page displays photographs of Kevin Termell GREEN (DOB XX/XX/XXXX), GREEN was observed in a rose-colored Porsche SUV, with Minnesota plates BZMXXX that listed to Minnie LOYD. LOYD is also on the Facebook page of GREEN as noted above. The phone number 612-265-XXXX was linked to XXXX in Burnsville, Minnesota in a public search database. The XXXX address is rented by LOYD. GREEN has been seen entering and exiting this address on several occasions.

(Gov't Ex. 7 at 1.) Save for whether the information connecting the 612-265-XXXX to the Burnsville Residence was found in a public or private database,[5] Green does not contest the information in this paragraph.

Finally, although Green complains that the July 2019 Affidavit lacks information regarding the reliability of the *Scales* interviewee, the information that the individual supplied Officer Schmitt incriminated the interviewee as it relates to a purchase of narcotics. The fact that the informant incriminates themselves makes the informant "presumptively credible because they were made against his penal interest." *United States v. Tyler*, 238 F.3d 1036, 1039 (8th Cir. 2001).

For all of these reasons, the Court finds that Green is not entitled to a *Franks* hearing on the information from the *Scales* interviewee provided in the July 2019 Affidavit.

**B.  The One-Digit Discrepancy in the July 2019 Affidavit Regarding a Telephone Number Allegedly Associated with Green**

According to Green, because Officer Schmitt stated in the July 2019 Affidavit that the *Scales* interviewee informed him that he used the phone number of 612-26**5**-XXXX

---

[5]    The type of database does not change the veracity of the fact that the number was linked to the Burnsville Residence.

to contact Green to arrange the mobile sale of narcotics, when the other search warrant applications at issue in this case listed the phone number obtained from the *Scales* interviewee as 612-26**3**-XXXX—a one-digit difference—a *Franks* hearing is necessary. (Dkt. 166 at 3-4.)  Moreover, Green acknowledges the fact that except for the portions dealing with the *Scales* interview and corroboration, the remainder of the July 2019 Affidavit lists the 612-263-XXXX number as the number allegedly associated with Green.  (Dkt. 166 at 3-4; Gov't Ex. 7.)  It is clear that use of the 612-265-XXXX, instead of the 612-263-XXXX number, at most, amounts to a typographical error.  "Allegations of negligence or innocent mistake will not suffice to demonstrate reckless or deliberate falsehood."  *United States v. Snyder*, 511 F.3d 813, 816 (8th Cir. 2008) (citations omitted).

## C.     Location of the Porsche and the Black Van on March 4, 2019

With respect to the Porsche mentioned in the July 2019 Affidavit, Green, relying on a receipt from a repair shop (Dkt. 144-1) and a December 16, 2019 email from the repair shop (Dkt. 166-1, Ex. 6), asserts that the "rose-colored Porsche **was likely** in the shop for service/pick-up on March 4, 2019 when it is alleged by a confidential reliable Informant ('CRI') that 'Stunna' delivered narcotics to Mooney out of the Porsche."  (Dkt. 166 at 4 (emphasis added).)

The portion of the July 2019 Affidavit at issue is as follows:

Your affiant has been able to gather information from a confidential reliable Informant (CRI) who is familiar with GREEN.  The CRI stated that GREEN used the Porsche to distribute heroin in Minneapolis and employs people to sell narcotics for him.  On March 4, 2019, the CRI stated that they saw a male known to the CRI as "Black" driving a van with Minnesota plates BREXXX

and noted that there appeared to be heroin customers just hanging out in around the area. The CRI stated that they saw GREEN pull up to the van with Minnesota plates BREXXX in the Porsche and toss a bag to Black as Black sat in the driver's seat of the van. After this happened, the CRI stated that Black sold heroin to people who were waiting for him in the area. The van, BREXXX, was registered to Minnie LOYD.

(Gov't Ex. 7 at 2-3.)

The invoice relied upon by Green provides that an order was closed for the Porsche on March 4, 2014. (Dkt. 141-1 at 5 of 16.) The service history under this order included the vehicle being towed in and dealing with a malfunctioning key. (*Id.*) There is nothing mentioned in these documents regarding the respective date(s) of these services or when the Porsche was ultimately picked up after the repairs had been completed. (*Id.*) The December 16, 2019 email relied upon by Green from Porsche Minneapolis provides, "I couldn't confirm when the car left I can only see when they closed out the repair order on the [sic] 3/4/2019. We posted the repair order on the [sic] 02/28/2019 so we have no proof when he picked up. He also paid cash so we have no proof of a payment stub." (Dkt. 166-1, Ex. 6.) Again, these documents provide no proof of when the vehicle left the repair shop so as to make any finding that Officer Schmitt knowingly and intentionally made false statements or made statements in reckless disregard for the truth regarding the involvement of the Porsche in a drug deal on March 4, 2019. Indeed, further investigation by law enforcement shows that the "closed" order meant that the vehicle was paid for on the prior business day, Friday, March 1, 2019. (Dkt. 168-1, Ex. 1.) This, coupled with the fact that the detailed service invoice obtained by law enforcement showing that the work was completed on February 28, 2019 (Dkt.

168-1, Ex. 1 at 3 of 4), demonstrates again that it was possible that the vehicle was out on the road as of March 4, 2019, and therefore that the Porsche in dispute could have been involved in the drug transaction as claimed by the CRI in the July 2019 Affidavit. Because Green has failed to meet his high burden regarding whether Officer Schmitt's statement relating to the Porsche was made with intentional falsity or reckless disregard for the truth, Green is not entitled to a *Franks* hearing on this issue.

With respect to the van, license #BREXXX, allegedly involved in the March 4, 2019 drug transaction as asserted by the CRI in the July 2019 Affidavit, Green's mother, Cheryl Green, submitted an affidavit dated December 14, 2019 claiming that she had in her possession the van registered to Minnie Lloyd as #BREXXX in Chicago on February 28, 2019. (Dkt. 166-1, Ex. 5 at ¶ 3.) The relevant portion of Cheryl Green's Affidavit provides, "[d]riving home to Chicago, my van became disabled. Kevin Green had his nephew drive Ms. Lloyd's van, license No. BREXXX to Chicago on February 28, 2019. I have the van in Chicago today." (Dkt. 166-1, Ex. 5 at ¶ 3.) The Affidavit is dated December 14, 2019. While it may be true that Green had his nephew drive his mother to Chicago on February 28, 2019, there is nothing in the Affidavit representing that the van stayed in Chicago through March 4, 2019, the date of the drug transaction involving the van as alleged by the CRI in the July 2019 Affidavit. Although Green's mother claims that she had possession of the van in Chicago on the date she signed the affidavit, December 14, 2019, there is no averment that she has continuously had the van in her custody in Chicago since February 28, 2019. Further, the CRI's statement is partly corroborated by Cheryl Green in that she confirms that Green had control over the van at

issue.  Therefore, Green has not met his initial burden of demonstrating deliberate

falsehood or reckless disregard for the truth by Officer Schmitt as it relates to his reliance

on the CRI.

**D.    Time of Green's Arrest**

Green asserts that he was arrested prior to the execution of the July 2019 Search

Warrant.  (Dkt. 166 at 4.)  While it is unclear, the Court assumes that Green is arguing

that because the July 2019 Affidavit omitted this fact from the judge prior to the issuance

of the July 2019 Search Warrant, a *Franks* hearing is required.  Initially, Green provided

no evidence to support this claim.  As part of his later motion to suppress his July 8, 2019

arrest, Green submitted the Criminal Complaint submitted by Officer Schmitt two days

later on July 10, 2019.  The probable cause Criminal Complaint is based on the execution

of the July 8, 2019 Search Warrant at the Burnsville Residence, where Officer Schmitt

asserted in the affidavit in support of the Criminal Complaint that the search of the

Burnsville Residence was executed at 11:30 a.m.  (Dkt. 175-1 at 2.)  The July 8, 2019

Search Warrant was signed by Hennepin County District Judge Tim Wermager on July 8,

2019 at 11:56 a.m.  (Gov't Ex. 7.)  However, Green ignores the search warrant inventory

signed by a Hennepin County District Judge on the same day the July 2019 Search

Warrant was executed, which provides that the July 2019 Search Warrant was executed at

1:30 p.m. on July 8, 2019.  (Gov't Ex. 7.)

The Government also provided evidence in the form of a camera still shot of what

appears to be Green being taken into custody on July 8, 2019 at 18:35 Zulu, which is the

equivalent of 1:35 p.m., after the search warrant was signed by Judge Wermager at 11:56

a.m. on July 8, 2019.  (Dkt. 168 at 17.)  Given that the camera still shot of Green's arrest is consistent with the contemporaneous inventory filled out by Officer Schmitt (the same day as the execution of the search warrant), the Court finds that the statement in the affidavit in support of the Criminal Complaint (filled out two days later by Officer Schmitt) that the search of the Burnsville Residence was executed at 11:30 a.m. is at most a typographical error.  In any event, Green has not set forth how this information changes the probable cause finding as it relates to the issuance of the July 2019 Search Warrant. For all of these reasons, the Court concludes that Green is not entitled to a *Franks* hearing on this issue.

E.    **Officer Schmitt's Representation in a Separate July 1, 2019 Search Warrant Affidavit**

Green asserts that Officer Schmitt represented in a different July 1, 2019 search warrant application for two of Green's alleged vehicles that the search warrant for the Burnsville Residence that is the subject of the July 2019 Search Warrant had already been issued.  (Dkt. 166 at 5.)  Even assuming that this assertion in the July 1, 2019 warrant application was false, Green does not explain how it would affect the July 8, 2019 search warrant at issue in his motion to suppress and for *Franks* hearing.  *See United States v. Lucca*, 377 F.3d 927, 932 (8th Cir. 2004) ("While the information that Decker made a false statement to his police chief in an unrelated matter has some bearing on his credibility, it is not sufficient standing alone to justify a Franks hearing on the Lucca warrant.") (citation omitted).  Regardless, the statement by Officer Schmitt in the July 1, 2019 search warrant application is not false.  On June 28, 2019, Officer Schmitt applied

14

for and obtained a search warrant for the Burnsville Residence that is the subject of the July 8, 2019 Search Warrant, prior to obtaining the July 1, 2019 search warrant application for two of Green's alleged vehicles. (Dkt. 168-2.) Therefore, the Court finds that a *Franks* hearing on this issue is not appropriate.[6]

**F.    Letters Dated December 2019 from Tiera Ligon, Leon Mooney, and Brenda Turner Contesting the Facts in the July Affidavit**

In support of his argument for a *Franks* hearing, Green relies on the December 2019 letters from Tiara Ligon, Leon Mooney, and Brenda Turner, as well as an undated letter from Jalesha Slaughter, disputing the facts set forth in the July 2019 Affidavit. (Dkt. 166-1, Exs. 8-9; Dkt. 171-1.) Green characterizes these letters as affidavits in his memorandum in support of a *Franks* hearing. (Dkt. 166 at 5.) However, the letters are neither sworn statements nor declarations made under penalty of perjury, and therefore do not amount to reliable statements that can be considered for the purposes of determining whether a *Franks* hearing is appropriate. *See Gonzalez*, 781 F.3d at 430 (requiring "supporting affidavits or similarly reliable statements . . .").

---

[6]    Similarly, Green also argues a *Franks* hearing is necessary because a different June 11, 2019 Search Warrant Affidavit falsely states that the 612-219-XXXX number was used by Loyd to rent a Maserati on June 10, 2019, when the information from the rental agency that the 612-219-XXXX phone number was not the phone number used to rent the Maserati in June. Green does not explain how this fact, even if true, changes the probable cause finding as to the July 8, 2019 Search Warrant—which makes no mention of a Maserati rental by Loyd.

G.     **Inconsistencies Between the July 2019 Affidavit and the May 1, 2019 and June 11, 2019 Search Warrant Affidavits Involving Green's Presence at the Burnsville Residence and the Surveillance of April 17, 2019**

For the first time in his reply memorandum in support of his motion to suppress the July 2019 Search Warrant, Green argues that inconsistencies between Officer Schmitt's July 2019 Affidavit and his May 1, 2019 Affidavit for a tracking warrant on the 612-263-XXXX number (Dkt. 166-1, Ex. 3), as well as his June 11, 2019 Affidavit for a tracking warrant on the 612-263-XXXX number (Dkt. 166-1, Ex. 10), necessitate a *Franks* hearing.  (Dkt. 171 at 2-3.)

Officer Schmitt's Affidavit at Exhibit 3 contains the following relevant portions to Green's argument:

> On 04/17/2019, Surveillance was conducted on GREEN.  Affiant observed GREEN exit the home on XXXX McAndrews Road in Burnsville.  This was the first time he has visually been observed at the address he is believed to live at.  GREEN got into the passenger seat of a Red Chevrolet Camaro with Kentucky license plate 085XXX.  The vehicle's license plate was run and found to be a rental vehicle.  GREEN had previously been observed driving a rental vehicle about a month ago.  That vehicle had been rented and returned to the Midway airport in Chicago on April 6.  That vehicle, an Infinity with an Ohio license plate of GEDXXXX had been rented by Kyamiaya Howell in the Chicago area.  Howell may be GREEN's sister.

> Green recently drove to Chicago where he stayed for about 20 hours before returning to the Twin Cities.  On 04/06/2019, GREEN's phone location logged time in at the Midway airport location in Chicago.  Your Affiant later confirmed that the Camaro was rented on that date.  When GREEN reached the area around Black River Falls Wisconsin his phone was turned off.  In your affiant's experience, turning off a cell phone during a partial or full trip from Chicago to the Twin Cities when transporting drugs is not uncommon.

> GREEN was observed driving from Burnsville to multiple locations.  Of note he drove to 45 Street East and Clinton Ave S in Minneapolis where he exited his vehicle and took a seat in the rear of a Chrysler 300.  Affiant was unable to get the license plate of the Chrysler.  GREEN exited the Chrysler within 5

minutes and was holding something that appeared to have weight to it under his jacket. His actions were that of concealing as he hunched over and scanned the area with his head moving side to side as he got back into his vehicle. GREEN now took over as the driver of the Camaro. Affiant was able to later Identify Minnie Loyd as the passenger in the vehicle.

(Dkt. 166-1, Ex. 3.) The June 11, 2019 Affidavit for a tracking warrant on the 612-263-XXXX number contains similar language. (Dkt. 166-1, Ex. 10.)

The July 2019 Affidavit provides in relevant part:

On April 17, 2019, GREEN was observed to drive from XXXX McAndrews Road East to 45th Street East and Clinton Avenue South in Minneapolis where he exited his vehicle and took a seat in the rear of a Chrysler 300. GREEN exited the Chrysler within five minutes and was holding something that appeared to have weight to it under his jacket. His actions were that of someone who was trying to conceal something as he hunched over and scanned the area with his head moving side to side as he got back into his vehicle. Law enforcement was able to later identify LOYD as the passenger in the vehicle.

(Gov't Ex. 7 at 3.)

Green complains that the failure to provide in the July 2019 Affidavit that April 17, 2019 was the first time officers observed Green coming from the Burnsville Residence is somehow determinative of probable cause without providing any reasoning for this assertion. The fact that April 17, 2019 was the first day Green was observed by law enforcement at the residence is of no critical import. Instead, the pertinent inquiry is whether based on the totality of the circumstances there was information supporting a fair probability that contraband or evidence of a crime would be found at the Burnsville Residence as of July 8, 2019. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). Green ignores the fact that the Affidavit sets forth that Green was seen entering and exiting the Burnsville Residence multiple times, including on April 17, and again on June 27, when

he left the residence to engage in what appeared be in the officer's experience and training, multiple narcotics transactions, or the fact that he was seen at the Burnsville Residence on the day the search warrant was issued. For the reasons set forth below in Section I.H., *infra*, there was a fair probability that contraband or evidence of a crime would be found at the Burnsville Residence as of July 8, 2019, even if April 17, 2019 was the first day he was observed at the residence by law enforcement.

Green also argues that the July 2019 Affidavit omits the fact that he drove in a car on April 17, 2019 to multiple locations after leaving the Burnsville Residence, instead of driving directly to the location where he engaged in a suspected drug transaction as set forth in the July 2019 Affidavit, which he claims goes to the nexus to search the Burnsville Residence. (Dkt. 171 at 3.) However, the Court does not find that the affidavits are necessarily inconsistent. Contrary to Green's assertion, the May 1, 2019 and June 11, 2019 Affidavits do not say that Green was seen going to multiple locations before the alleged drug transactions, only that he was seen going to multiple places with the only one of importance being where the purported drug activity took place. In sum, Green has failed meet his burden to show that these purported inconsistencies necessitate a *Franks* hearing.[7]

---

[7]    Green also claims that the July 2019 Affidavit falsely states that he drove the vehicle on April 17, 2019. (Dkt. 171 at 3.) It is not clear to the Court that the statement that "GREEN was observed to drive from . . ." necessarily implies that Green actually drove the vehicle. In any event, Green cannot in good faith assert that whether he was driving the vehicle, as opposed to a mere passenger, has any bearing on the probable cause finding, especially as it relates to the necessary nexus between the illegal activity and the Burnsville Residence.

**H.**    **The (612) 219-XXXX Telephone Number and Whether the July 2019 Search Warrant is supported by Probable Cause.**

In an earlier June 11, 2019 Search Warrant Affidavit, Officer Schmitt sought the installation and use of a pen register, trap and trace devices, electronic tracking, and/or cellular tower location information for telephone number 612-219-XXXX.  As the basis for this search warrant, Officer Schmitt represented in part as follows:

> Your Affiant learned of a narcotics dealer who uses the street name of "Stunna".  The information was obtained via a SCALES interview during the course of a narcotics arrest. "Stunna" was said to be a large scale supplier of Heroin.  During the course of the interview the arrested party stated they had been in a Porsche SUV with "Stunna" and purchased 100 grams of heroin.  "Stunna" was said to often drive a Prosche [sic] SUV that was Rose in color.  The phone number of **612-219-XXXX** was identified as the mobile number used to contact "Stunna" and arrange for the mobile sale of narcotics.

(Dkt. 166-1, Ex. 10 (emphasis added).)

With respect to the July 2019 Affidavit that is the basis of the motion to suppress the search warrant at the Burnsville Residence, as set forth previously, the July 2019 Affidavit provides:

> On January 31, 2019, your affiant learned of a narcotics dealer who uses the street name of "Stunna".  The information was obtained via a SCALES Interview during the course of a narcotics investigation.  Stunna was said to be a large-scale supplier of Heroin.  During the interview, the arrested party stated they had been in a Porsche SUV with Stunna and purchased 100 grams of heroin from Stunna.  This arrested party said that Stunna often drives a Porsche SUV that was rose in color.  The arrested party used the phone number of **612-265-XXXX** to contact Stunna and arrange for the mobile sale of narcotics.

(Gov't Ex. 7 at 2 (emphasis added).)  The only other material mention of the telephone number in the July 2019 Affidavit was that "[t]he phone number 612-265-XXXX was

19

linked to XXXXX in Burnsville, Minnesota in a public search database." (*Id.*)

According to Green, the fact that Officer Schmitt asserted that the information from the *Scales* interview was that the 612-219-XXXX number, as opposed to the 612-263-XXXX number listed in the July 2019 Affidavit, was used to arrange for the mobile sale of narcotics is reason alone to warrant a *Franks* hearing. (Dkt. 166 at 6.) The Government counters that Green cannot bootstrap another warrant filed by Officer Schmitt in order to attack the July 8, 2019 warrant. (Dkt. 168 at 20.) The Government also argues that "[a]ttributing the (612) 219-XXXX number to the confidential informant's statement on January 31, 2019 could certainly be a result of negligence or simply a mistake, which would not be grounds for a *Franks* hearing." (*Id.*)

Even assuming for argument's sake that Officer Schmitt knowingly and intentionally made false statements or made statements in reckless disregard for the truth with respect to the assertion in the Affidavit that "[t]he arrested party used the phone number of 612-265-XXXX to contact Stunna and arrange for the mobile sale of narcotics" and that "[t]he phone number 612-265-XXXX was linked to XXXX in Burnsville, Minnesota in a public search database," the Court may not grant a *Franks* hearing if the search warrant is supported by probable cause even with the offending portions excised. *See Daigle*, 947 F.3d at 1084.

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. *See Gates*, 462 U.S. at 236. "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of

20

a crime would be found in a particular place." *United States v. Fladten*, 230 F.3d 1083, 1085 (8th Cir. 2000) (citing *Gates*, 462 U.S. at 238). The task of a court issuing a search warrant is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. "Probable cause is a fluid concept that focuses on 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *United States v. Colbert*, 605 F.3d 573, 576 (8th Cir. 2010) (quoting *Gates*, 462 U.S. at 231). In reviewing the decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. *See Gates*, 462 U.S. at 238-39 (citation omitted); *see also United States v. LaMorie*, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as a reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge."). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005) (citing *United States v. Etheridge*, 165 F.3d 655, 656 (8th Cir. 1999), quoting *United States v.*

*Gladney*, 48 F.3d 309, 312 (8th Cir. 1995)); *United States v. Smith*, 581 F.3d 692, 694 (8th Cir. 2009) (quoting *United States v. Reivich*, 793 F.2d 957, 959 (8th Cir. 1986)).

Given this standard of review, the Court will now proceed with determining whether the search warrant at issue in this case for the Burnsville Residence at Government Exhibit 7 is supported by probable cause even without reliance upon the telephone number at issue.  Green argues that there is an insufficient nexus between any illegal activity and the Burnsville Residence on the basis that there was no information included in the July 2019 Affidavit that Green sold heroin out of the residence or that anyone has ever purchased drugs from the residence.  (Dkt. 166 at 7-8, 12.)  Green maintains that the only information that law enforcement had regarding his alleged narcotics trafficking in the July 2019 Affidavit was based on speculation.  (*Id.* at 10.)  Green also takes issue with the fact that he was only seen by law enforcement twice at the Burnsville Residence.  (*Id.* at 11-12.)

The July 2019 Affidavit alleges the following relevant facts:

- On January 31, 2019, Officer Schmitt learned of a narcotics dealer who uses the street name of "Stunna".  The information was obtained via a SCALES Interview during the course of a narcotics investigation.  Stunna was said to be a large-scale supplier of Heroin.  During the interview, the arrested party stated they had been in a Porsche SUV with Stunna and purchased 100 grams of heroin from Stunna.  This arrested party said that Stunna often drives a Porsche SUV that was rose in color.

- Officer Schmitt found a Facebook page with the username of "Chuck Green" with the tag line of "King Stunna".  The Facebook page displayed photographs of Kevin Termell Green.  Green was observed in a rose-colored Porsche SUV, with Minnesota plates BZMXXX, that was listed to Loyd.  Loyd was also observed on Green's Facebook page.

- The Burnsville Residence was rented by Loyd.

- Green was seen entering and exiting this address on several occasions.

- Green has a 2007 controlled substance felony conviction out of Illinois, thereby making it a felony for Green to possess firearms.

- On February 13, 2019, Green was observed traveling to multiple locations and meeting with three different people for short periods of time. Based on Officer Schmitt's observations of the interactions, and on his training and experience, he believed that these meetings were narcotics transactions.

- Officer Schmitt obtained information from a confidential reliable Informant ("CRI") who is familiar with Green. The CRI stated that Green used the Porsche to distribute heroin in Minneapolis and employs people to sell narcotics for him.

- The CRI stated to Officer Schmitt that on March 4, 2019, he or she saw a male known to the CRI as "Black" driving a van with Minnesota plates BREXXX and noted that there appeared to be heroin customers hanging out in and around the area. The CRI stated that they saw Green pull up to the van with Minnesota plates BREXXX in the Porsche and toss a bag to Black as Black sat in the driver's seat of the van. After this happened, the CRI stated that Black sold heroin to people who were waiting for him in the area.

- The van driven by Black was registered to Loyd.

- On April 17, 2019, Green was observed to drive from the Burnsville Residence to 45th Street East and Clinton Avenue South in Minneapolis where he exited his vehicle and took a seat in the rear of a Chrysler 300. Green exited the Chrysler within five minutes and was holding something that appeared to have weight to it under his jacket. According to Officer Schmitt, Green's actions were that of someone who was trying to conceal something, as he hunched over and scanned the area with his head moving side to side, as he got back into his vehicle. Law enforcement was able to later identify Loyd as the passenger in the vehicle.

- On May 7, 2019, Leon Mooney ("Mooney") was arrested for narcotics after he was found to be in possession of 4.7 grams of heroin and $12,514.00 dollars in cash. Mooney goes by the street name of "Black". Law enforcement suspected that Mooney was the person named "Black" that the CRI referred to in connection with the March 4, 2019 incident involving the sale of heroin.

- While Mooney was in Hennepin County Jail, he made a recorded call on May 7, 2019, Mooney placed a call to a female who is believed to be his girlfriend, Tiara Ligon ("Ligon"). In this recorded call, Mooney told Ligon that he had 3.5 when arrested. Mooney also told Ligon he had around $14,000.00 dollars in cash. During the call, the female repeatedly uses the name "Stunna" and notes "he", referring to Stunna, told her about Mooney's arrest and how much heroin Mooney was arrested with. Ligon appears to have tried to add a three-way phone call to Stunna without success. Law enforcement believed that the "Stunna" Ligon referred to was Green.

- Mooney and Green are friends on Facebook and the phone number Mooney used in jail had contacted a phone number used by Green according to call detail records that were obtained for Green.

- On June 27, 2019, law enforcement conducted surveillance on the Burnsville Residence. During this surveillance, Green was observed leaving the address, getting into a Chevrolet Equinox with Minnesota plates, DCVXXX. This car was followed to a gas station on County Road 42 in Burnsville. Green parked in the lot with his windows down. He was talking with a female on speaker phone as he sat in the car alone. Officers were parked close enough to hear the conversation. Green told the woman that he had "bomb diesel". Based on his experience, internet research, and upon conversations with other law enforcement officers, Officer Schmitt believed that the term "bomb diesel" is a term meant to describe good-quality heroin.

- Green was then followed by law enforcement from the gas station back to the north side of Lake Nokomis. Green took an indirect route and made other evasive driving actions common among those who sell drugs. According to Officer Schmitt, such dealers want to know if they are being followed and this type of driving conduct makes it hard for law enforcement to follow people without being detected.

- Once stopped at a park on Lake Nokomis, Green was immediately approached by three vehicles. The occupants of the three vehicles would walk or jog up to Green's vehicle, get into the vehicle and then exit a short time later. The interactions between Green and the occupants of the three cars were consistent with the other drug deals Officer Schmitt has observed in the past.

- One of these vehicles was a Ford Windstar minivan with Minnesota plates MCUXX. This plate was listed to Wallace Johnson ("Johnson") at a specified Minneapolis residence. A search warrant had been issued for this residence as recently as April 18, 2019, during which law enforcement recovered a large amount of heroin and discovered that several of the occupants of the home admitted to being heroin addicts, including Johnson. Johnson appeared to be one the individuals observed interacting with Green on June 27, 2019 at the Lake Nokomis park. Based on the phone call law enforcement overheard, Green's driving conduct, the observations of the three narcotics transactions around Lake Nokomis, including one where Johnson's van was observed, Officer Schmitt was convinced that Green was selling heroin.

- On July 8, 2019, officers conducted surveillance for the Burnsville Residence and observed Green standing in the driveway of the Burnsville Residence. One of the vehicles in the driveway included an Audi Q7 registered to Loyd.

(Gov't Ex. 7.) Officer Schmitt requested a warrant for the Burnsville Residence, Green, and any coconspirators present. (*Id.*) Officer Schmitt believed the Burnsville Residence was being utilized for the storage of narcotics and narcotics proceeds. (*Id.*)

Given all of this information, this Court finds that a reasonable person could conclude that there was evidence of a crime located at the Burnsville Residence at the time the July 2019 Search Warrant was issued. The July 2019 Affidavit sets forth facts establishing drug-dealing activities and ties them to the Burnsville Residence. Specifically, law enforcement became aware of Green through an arrested individual, who admitted during his arrest that he had purchased 100 grams of heroin from Stunna,

who was driving a Rose Porsche SUV. (Gov't Ex. 7 at 2.) Green asserts that the only

evidence of his drug dealing is based on this unreliable individual. (Dkt. 166 at 10-11.)

However, the fact that the informant incriminated themself by admitting to purchasing

narcotics from Stunna makes the informant's statements "presumptively credible because

they were made against his penal interest." *Tyler*, 238 F.3d at 1039. Such statements

"against the penal interest of an informant typically carry considerable weight." *Id.*

(citation omitted). Moreover, law enforcement was able to corroborate the *Scales*

interviewee's information via a Facebook page with the username of "Chuck Green" and

the tagline of "King Stunna", which included pictures of Green in the Porsche described

by the *Scales* interviewee. *See Dennis*, 625 F.2d at 791 ("The credibility of an informant

may be established by corroboration . . . of only parts of an informant's story."). Further,

the information via the *Scales* interviewee and the Facebook page connects the Burnsville

Residence to drug trafficking activity. The Porsche in which Green is pictured is

registered to Loyd who is the listed renter for the Burnsville Residence. (*See* Gov't Ex. 7

at 2.)

In addition, the July 2019 Affidavit contains further information tying Green and

the Burnsville Residence to drug trafficking in the form of a second informant who was

familiar with Green. The CRI told law enforcement that Green used the Porsche to

distribute heroin in Minneapolis and employed people to sell narcotics for him. This

information is consistent with information provided by the *Scales* interviewee. *See*

*United States v. Fulgham*, 143 F.3d 399, 401 (8th Cir. 1998) ("In fact, the two

informants' tips were reciprocally corroborative, rendering their information enough to

support a finding of probable cause."); *see also United States v. Barnes*, No. 018CR120ADMKMM1, 2019 WL 3293467, at *5 (D. Minn. Apr. 8, 2019), *R.&R. adopted*, 2019 WL 2353659 (D. Minn. June 4, 2019) (citation omitted) ("In circumstances where multiple informants provide information that is 'reciprocally corroborative,' that information can be enough to support a finding of probable cause."). The information provided by the CRI included a March 4, 2019 transaction where the CRI claimed that they saw Green pull up to a van with Minnesota plates BREXXX in the Porsche and toss a bag to a person named Black in the driver's seat of the van. (Gov't Ex. 7 at 2-3.) After this happened, the CRI stated that Black sold heroin to people who were waiting for him in the area. (*Id.* at 3.) The van at issue was also registered to Loyd, who is the listed renter of the Burnsville Residence. (*Id.*) As such, there are at least two instrumentalities (the two vehicles) of the alleged drug trafficking that are connected to Green and the Burnsville Residence, which serves to strengthen the required nexus between the residence and illegal narcotics trafficking.

Moreover, the July 2019 Affidavit provides that law enforcement had observed Green coming out of the Burnsville Residence several times, including, but not limited to on April 17, 2019, with Loyd as the passenger, and on July 8, 2019, the date that the search warrant was sought. More importantly, on June 27, 2019, less than ten days before the execution of the July 2019 Search Warrant, officers observed Green leave directly from the Burnsville Residence, travel to a potential customer to let them know that he had good heroin to sell, then directly travel, albeit in furtive manner, to engage in what appeared to be, based on the officers' experience and training, drug transactions

with three individuals, including one person that was known to police as a heroin addict. As previously stated, Green argues there was no definitive evidence of any drug trafficking during the surveillance, only speculation by law enforcement.  (Dkt. 166 at 10.)  However, Green ignores the fact that in determining whether probable cause exists, courts recognize that law enforcement officers possess specialized law enforcement experience and thus may "draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous."  *United States v. Caves*, 890 F.2d 87, 94 (8th Cir. 1989) (citation and internal quotations omitted).

Further, the Court rejects Green's contention that the lack of evidence of trafficking directly from the Burnsville Residence is determinative, given that the Eighth Circuit has held that evidence of a suspect's narcotics trafficking that was discovered elsewhere can support a finding of probable cause to search a residence.  *See United States v. Tellez*, 217 F.3d 547, 549 (8th Cir. 2000).  Green asserts that unlike *Tellez*, no witness or informant called Green or arranged for a buy, and certainly no witness or informant has any knowledge of narcotics associated with the Burnsville Residence. (Dkt. 166 at 10.)  However, there is nothing in *Tellez* requiring at least that level of evidence for a finding of probable cause.  Indeed, what was important to the Eighth Circuit in *Tellez* was that there was evidence that *Tellez* was engaged in a continuing course of criminal activity from which it could fairly be inferred that he was keeping a supply of drugs and perhaps other evidence related to his drug dealing at the residence at issue.  *See Tellez*, 217 F.3d at 549 ("The facts alleged in the affidavit indicate that Mr. Tellez was a drug dealer and had offered to provide drugs in the future on demand.  The

informant had spoken with Mr. Tellez over the telephone and had arranged for another sale.  The new sale was to take place in the immediate future, and the police knew that Mr. Tellez had been at home and not anywhere else since leaving the informant's residence."); *see also United States v. Penaloza-Romero*, No. 14-CR-2898 SRN/JSM, 2015 WL 3742994, at *14 (D. Minn. June 15, 2015) ("'[P]robable cause does not require direct evidence linking a crime to a particular place.' 'Magistrates are 'entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the evidence and the type of offense.'") (citations omitted) (quoting *United States v. Anderson*, 450 F.3d 294, 303 (7th Cir. 2006); *United States v. Caswell*, 436 F.3d 894, 899 (8th Cir. 2006)).  Here, the evidence in the July 2019 Affidavit, as set forth above, shows a continuing course of criminal activity by Green since January 2019 and sufficiently connects Green, his alleged illicit activities, and the instrumentalities of those criminal activities to the Burnsville Residence, including the June 27, 2019 surveillance of Green, less than ten days before the execution of the search warrant, for the purposes of allowing a judge to draw reasonable inferences about where evidence of illicit drug trafficking is likely to be kept.

In support of his position that the July 2019 Affidavit fails to provide a sufficient nexus between his alleged activity and the Burnsville Residence, Green also relies on *United States v. Rios-Uscanga*, No. 16-CR-316-RHK-KMM, 2017 WL 1534746 (D. Minn. Mar. 13, 2017), *R.&R. adopted*, 2017 WL 1534745 (D. Minn. Apr. 26, 2017).  In *Rios-Uscanga*, law enforcement saw the defendant at his girlfriend's house only once and observed no suspicious activity the girlfriend's house at that time.  *Id.* at *3.  That said,

the court also noted that law enforcement could have still established probable cause to search the house even if the Defendant did not live there. *Id.* at *4. Even though the July 2019 Affidavit does not establish that Green lived at the residence, the facts in the affidavit as set forth above, along with reasonable inferences drawn therefrom, established a sufficient nexus between the evidence sought and the place to be searched, even omitting the information regarding the 612-263-XXXX/612-265-XXXX numbers.

As such, Green's Motion for a *Franks* hearing and Motion to Suppress Evidence seized as the result of the July 8, 2019 Search Warrant should be denied.

## II.    GREEN'S MOTION FOR SUPPRESSION OF EVIDENCE OBTAINED BY MEANS OF ELECTRONIC SURVEILLANCE (DKTS. 99 AND 158)

On March 6, 2019, pursuant to 18 U.S.C. §§ 2703 (d), 3122 (a)(2), and 3123 and Minn. Stat. §§626A.36 and 626A.37, a state district judge issued a search warrant authorizing the installation and use of a pen register and trap and trace device for the 612-263-XXXX cellular phone.  (Dkt. 158-1 at 9 through 16 of 67.)  The information sought included caller identification (incoming and outgoing telephone numbers) for the number. In addition, the search warrant authorized the cellular tower location and service information, global position system ("GPS") information, and tracking as it related to the 612-263-XXXX cellular phone.

The relevant portions of the probable cause for the search warrant set forth in Officer Schmitt's March 6, 2019 Affidavit ("March 2019 Affidavit") provides as follows:

> Your Affiant learned of a narcotics dealer who uses the street name of "Stunna".  The information was obtained via a SCALES interview during the course of a narcotics arrest.  "Stunna" was said to be a large scale supplier of Heroin.  During the course of the interview the arrested party stated they had

been in a Porsche SUV with "Stunna" and purchased 100 grams of heroin. "Stunna" was said to often drive a Porsche SUV that was Rose in color. The phone number of 612-263-XXXX was identified as the mobile number used to contact "Stunna" and arrange for the mobile sale of narcotics.

Your affiant was able to investigate this information and determined that "Stunna" was named Kevin Tennell GREEN, DOB XX/XX/XXXX. It was further learned that his girlfriend used the social media name of Minnie Betty Jean.

GREEN has a Controlled Substance Felony Conviction out of Illinois.

Surveillance was established in the area of Franklin Ave and Nicollet Ave searching for a target of a separate narcotics investigation. Your affiant noted a Rose-colored Porsche SUV drive down the alley and into the back parking lot of 2109 Blaisdell Ave South. The vehicles license plate was noted as BZMXXX. It registered to a Minnie Loyd. A comparison of photographs confirmed that Minnie Loyd was the same individual a [sic] Minnie Betty Jean. Affiant was able to physically observe and identify Kevin Tennell GREEN, DOB XX/XX/XXXX driving this vehicle. GREEN was observed travelling to multiple locations and meeting with three different persons for short periods of time. The locations included 2109 Blaisdell Ave S where GREEN pulled into the back parking lot and met with a male. GREEN then drove to Winnetka and Highway 55 in Golden Valley where he left his vehicle running in the traffic lane of the parking lot in front of Pancheros restaurant while he met with a male in a vehicle. Green then drove to Mickey's Liquor on Plymouth Ave N and Emerson Ave N where he met with another person in a vehicle. These interaction [sic] in your affiant's experience are indicative of narcotics transactions.

It is believed that GREEN may be living at the address of XXXX in Burnsville, however this information is yet to be confirmed.

The phone number 612-263-XXXX has been identified as a VERIZON WIRELESS affiliated and operated number.

Affiant is requesting the court's permission to establish the listed technology on the phone number of 612-263-XXXX to further the investigation into the sale of narcotics by Kevin Termell GREEN, DOB XX/XX/XXXX. The GPS tracking of GREEN's cell phone will allow officers to establish physical surveillance in order to confirm the residence of GREEN. In learning this, affiant hopes to learn the location and storage area for the narcotics along with any co-conspirators involved in distribution.

> Affiant will also track movements of GREEN and attempt to witness narcotics transactions as they occur.
>
> This order will also aid in the location of GREEN to facilitate the installation of a GPS tracker for his vehicle. Affiant currently has a tracking order signed by a judge for the Porsche SUV operated by GREEN.

(Dkt. 158-1 at 2 through 5 of 67.)

Green argues that the electronic search warrant for telephone number 612-263-XXXX lacks probable cause and is not subject to the *Leon* good faith exception since there is absolutely no reference to times, places, or a nexus to Green's phone number. (Dkt. 158 at 1.) In the alternative, because of the allegedly reckless or intentional false statements or omissions necessary for a finding of probable cause, Green requests a *Franks* hearing. (*Id.* at 2.)

As it relates to probable cause, Green complains that the there is nothing in the March 2019 Affidavit linking Green to the name of "Stunna" listed in the Affidavit. (*Id.* at 3.) In addition, Green argues that the March 2019 Affidavit lacks any mention of when or where the *Scales* interviewee observed the alleged drug interaction or for that matter any discussion of the reliability of the *Scales* interviewee (including not showing a picture of Green to the individual) or what was promised to the interviewee. (*Id.* at 3-4.) Green also argues that the omission of this information amounts to a reckless omission of facts that necessitates a *Franks* hearing. (*Id.* at 4.) Green argues that with the excised "poisonous fruit" dealing with the *Scales* interview, the March 6, 2019 Search Warrant ("March 2019 Warrant") and the May 1, 2019 Search Warrant Application Extension ("May 2019 Extension") to track the cell phone of 612-263-XXXX lack sufficient

probable cause.  (*Id.* at 5.)  In addition, Green makes some of the same arguments for a *Franks* hearing as he made with respect to the July 2019 Affidavit including: (1) the July 2019 Affidavit claimed that the number of 612-265-XXXX was associated with Green rather than 612-263-XXXX, which according to Green makes the March 2019 Warrant and May 2019 Extension suspect (*id.* at 5-6); (2) that Officer Schmitt lied about having a search warrant for the Burnsville Residence in a July 1, 2019 search warrant application for two of Green's alleged vehicles (*id.* at 7); and (3) that the information regarding the Porsche is unreliable for the same reasons as set forth in the motion to suppress the July 8, 2019 Search warrant (*id.*).  Based on all this, Green contends that the March 2019 Application requesting a search for electronic surveillance on telephone number 612-263-XXXX is severely lacking in probable cause, or at the very least demonstrates a great need for a *Franks* hearing.  (*Id.* at 7-8.)

A.     **Whether the Tracking Search Warrants for the 612-263-XXXX Cellular Phone Are Supported by Sufficient Probable Cause**

Here, the March 2019 Affidavit contains a representation under oath by Officer Schmitt that he received information from an arrestee during a *Scales* interview that the interviewee had purchased 100 grams of heroin from an individual at the telephone number 612-263-XXXX.  As this Court addressed with respect to the July 2019 Affidavit, while Green challenges the reliability of this informant, the fact that the informant incriminated themselves by providing this information makes the informant presumptively credible because the statements were made against his or her penal interest.  *See Tyler*, 238 F.3d at 1039.  Moreover, any failure by Officer Schmitt to set

forth what was promised to the arrestee is does not affect this Court's decision as it relates to probable cause or the necessity of the *Franks* hearing. Judicial officers, such as the issuing judge in this case, know that confidential informants are not model citizens and are aware of the possibility that they may be seeking leniency for his or her own situation. *See Hall*, 171 F.3d at 1143. Green also asserts that the Affidavit contains no connection between the telephone number and Green. However, as Green noted, the *Scales* interviewee also provided information to Officer Schmitt that the individual named "Stunna" from whom the informant purchased the drugs often drove a rose-colored Porsche SUV. It was in a rose-colored Porsche SUV that Officer Schmitt observed Green engaging in multiple interactions in what appeared to be in Officer Schmitt's experience indicative of drug trafficking. This information not only corroborates the informant's information but also connects Green to drug trafficking activity and ties him to the 612-263-XXXX number (also referenced with the Porsche SUV by the informant)—even to the extent that such a connection is necessary. *See United States v. Boswell*, No. CR 19-132 ADM/LIB, 2019 WL 5061350, at *3 (D. Minn. Oct. 9, 2019) (quoting *United States v. Mims*, 567 F. Supp. 2d, 1059, 1068 (D. Minn. 2008) (collecting cases)) (confidential informant may be considered reliable in a number of circumstances, including where "the information is based on his or her first-hand observations, or the informant has provided information against his or her penal interest or that implicates him or herself, or the informant's information is corroborated by another informant or by the investigating officers, even where the facts which are corroborated are seemingly innocuous"). Green's assertion that the information

34

regarding the Porsche is unreliable is rejected for the same reasons set forth in this Court recommendation as it relates to the motion to suppress evidence related to the July 8, 2019 Search Warrant.  *See supra*, Section I.C.

The Court acknowledges that the March 2019 Affidavit lacks any mention of specific dates as to any of the events.  "While a lapse of time between the observations of a witness and the issuance of a search warrant may render probable cause fatally stale, there is no bright-line test for determining when information is stale."  *United States v. Gettel*, 474 F.3d 1081, 1086 (8th Cir. 2007) (cleaned up).  "A warrant becomes stale if the information supporting the warrant is not sufficiently close in time to the issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search."  *United States v. C-Cervantes*, 868 F.3d 695, 700 (8th Cir. 2017) (cleaned up).  "The passage of time is not necessarily the controlling factor in determining staleness, as other factors, such as the nature of the criminal activity involved and the kind of property subject to the search, must be considered."  *Gettel*, 474 F.3d at 1086 (cleaned up).  Indeed, "in investigations of ongoing narcotics operations, intervals of weeks or months between the last described act and the application for a warrant did not necessarily make the information stale."  *United States v. Formaro*, 152 F.3d 768, 771 (8th Cir. 1998) (cleaned up).

While lack of a date for the *Scales* interview is problematic, it does not necessarily render a search warrant *per se* invalid given that courts are charged with "making a common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a

particular place." *Gates*, 462 U.S. at 238.  The March 2019 Affidavit contains

information that the number at issue was an operated number at the time and also

provided: "[t]his order will also aid in the location of GREEN to facilitate the installation

of a GPS tracker for his vehicle. **Affiant currently has a tracking order signed by a**

**judge for the Porsche SUV operated by GREEN**."  (Dkt. 158-1 at 2 through 5 of 67

(emphasis added).)  Any lapse of time between the *Scales* interview and the active

tracking warrant for the Porsche involved in the alleged drug dealing "is least important

when the suspected criminal activity is continuing in nature and when the property is not

likely to be destroyed or dissipated." *Ortiz-Cervantes*, 868 F.3d at 700 (quoting *United*

*States v. Lemon*, 590 F.3d 612, 614 (8th Cir. 2010), quoting *United States v. Horn*, 187

F.3d 781, 786 (8th Cir. 1999)).  Indeed, "[a] cell phone is a durable, legal object likely to

be found with its owner, unlike a drug stash or a murder weapon of which one would

quickly dispose." *United States v. Grupee*, No. CRIM.A 08-10339-WGY, 2009 WL

4938669, at \*2 (D. Mass. Dec. 15, 2009), *aff'd*, 682 F.3d 143 (1st Cir. 2012).  The fact

that Officer Schmitt had an active tracking affidavit for the Porsche SUV driven by Green

related to his drug trafficking at the time Officer Schmitt sought the March 2019 Search

Warrant for the number also provided by the *Scales* interviewee, coupled with the durable

nature of phones (as opposed to a drug stash), and that the phone number was operating,

leads this Court to find that there was a fair probability that contraband or evidence of

a crime would be found by tracking the cell phone.  As such, the motion to suppress

should be denied on this basis.

B.    *Leon* **Exception**

Because the search warrants adequately authorized the search of the cellular phone

and was supported by probable cause (as set forth below), this Court need not determine

whether the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897 (1984),

should apply.  The Court notes, however, that even if the warrants were deficient, the

officers' reliance on the warrants would have been reasonable under *Leon*.

Under *Leon*, "'evidence seized pursuant to a search warrant issued by a [judge]

that is later determined to be invalid[] will not be suppressed if the executing officer's

reliance upon the warrant was objectively reasonable.'"  *United States v. Houston*, 665

F.3d 991, 994 (8th Cir. 2012) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th

Cir. 2007)).  In *Leon*, the court stated that "'searches pursuant to a warrant will rarely

require any deep inquiry into reasonableness,' for 'a warrant issued by a magistrate

normally suffices to establish' that a law enforcement officer has 'acted in good faith in

conducting the search.'"  468 U.S. at 922 (citations omitted).  However, the *Leon* court

noted that there are certain instances when "the purpose of the exclusionary rule—

deterring police misconduct—will not be served by suppressing illegally seized

evidence."  *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987); *Leon*, 468 U.S. at

922-23.  "When a police officer acts in an objectively reasonable manner in reliance on a

subsequently invalidated search warrant, there is no rational reason for suppressing the

fruits of the search."  *Martin*, 833 F.2d at 755.  The Court's "good-faith inquiry is

confined to the objectively ascertainable question whether a reasonably well trained

officer would have known that the search was illegal despite the magistrate's

37

authorization." *Leon*, 468 U.S. at 923 n.23.  The reviewing court should consider the totality of the circumstances, "including any information known to the officer but not included in the affidavit . . . ." *United States v. Jackson*, 784 F.3d 1227, 1231 (8th Cir. 2015) (citation omitted).  In this regard, evidence obtained as a result of an unconstitutional search should be suppressed under the following circumstances:

 i. when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge;

 ii. when the issuing judge "wholly abandoned his judicial role" in issuing the warrant;

 iii. when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and

 iv. when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid.

*Houston*, 665 F.3d at 995 (quoting *Proell*, 485 F.3d at 431).

 In this case, Green has not alleged—and the Court does not find—that the issuing judge wholly abandoned their judicial role in issuing the search warrant.  As to the first exception, Green has only raised the following allegedly false statements or omissions made knowingly and intentionally or with reckless disregard for its truth as it relates to the present Motion: information related by the *Scales* interviewee (Dkt. 158 at 3-4); the typo in the July 2019 Affidavit included the number of 612-265-XXXX rather than 612-263-XXXX was associated with Green, which according to Green makes the March and May 2019 warrants suspect (*id.* at 5-6); that Officer Schmitt lied about having a search warrant for the Burnsville Residence in a July 1, 2019 search warrant application for two

of Green's alleged vehicles (*id.* at 7); and that the information regarding the Porsche is

unreliable for the same reasons as set forth in the motion to suppress the July 8, 2019

Search warrant (*id.*). The Court has already rejected these arguments for the reasons set

forth in the Court's probable cause analysis and its analysis with respect to the July 8,

2019 Search Warrant. *See supra.* As to the third and fourth exceptions, Green provided

no specific argument that the affidavit in support of the warrant was so lacking in indicia

of probable cause or so facially deficient as to render official belief in its existence

entirely unreasonable (only seeking a four-corners review) and as set forth above, this

Court has concluded that sufficient probable cause existed to issue the search warrant.

Moreover, even though the March 2019 Affidavit lacked dates for the events, the Court

finds the officer's reliance on the search warrant was in good faith given that the March

2019 Affidavit contained facts that Officer Schmitt had an active tracking warrant for the

Porsche and that the phone was operating. *See generally*, *United States v. Williams*, No.

CR 15-239 (SRN/JSM), 2015 WL 13731351, at *5-7 (D. Minn. Oct. 21, 2015), *R.&R.*

*adopted*, No. 15-CR-239 (SRN/JSM), 2015 WL 7195086 (D. Minn. Nov. 16, 2015)

(upholding a search warrant under *Leon* where specific dates were missing in an

supporting affidavit). Further, it is important to note that in his July 2019 Affidavit,

Officer Schmitt provided that the *Scales* interview took place on January 31, 2019, just a

little over a month before the March 2019 Search Warrant (Gov't Ex. 7). *See Jackson*,

784 F.3d at 1231 (citation omitted) (finding that courts need to consider the totality of the

circumstances, "including any information known to the officer but not included in the

affidavit"). Given the mere passage of a month, during a narcotics investigation, from

when Officer Schmitt obtained the information from the *Scales* interview to when he

sought the March 2019 Search Warrant, the durable nature of a cell phone, and the active

tracking search warrant, officers' reliance on the warrant to track the cell phone was

objectively reasonable under *Leon*.

For all of the reasons set forth above, the Court finds the motion to suppress the

tracking warrants for the Tracking Search Warrants for the 612-263-XXXX Cellular

Phone should be denied.[8]

---

[8]     It is not entirely clear whether Green is challenging the pen register and trap and
trace, outside of tracking the physical location of the cell phone.  Section 3122 does not
require probable cause for issuance of an order authorizing the use of a pen register and
trap-and-trace device.  *See United States v. Woodson*, No. 4:16CR541AGF(SPM), 2018
WL 7150388, at *11 (E.D. Mo. Nov. 21, 2018), *R.&R. adopted*, 2019 WL 398453 (E.D.
Mo. Jan. 31, 2019) (citing 18 U.S.C. § 3122(b)).  Instead, the requirements are as
follows:

> (1) the identity of the attorney for the Government or the State law
> enforcement or investigative officer making the application and the identity
> of the law enforcement agency conducting the investigation; and

> (2) a certification by the applicant that the information likely to be obtained
> is relevant to an ongoing criminal investigation being conducted by that
> agency.

18 U.S.C. § 3122(b).  Similarly, Minnesota Statute § 626A.36, subd. 2(2), which also
authorizes the use of a pen register or trap and trace device, only requires "a statement of
the facts and circumstances relied upon by the applicant to justify the applicant's belief
that an order should be issued."  The installation of a pen register or trap and trace device
requires a showing that is well short of the probable cause requirement for a warrant.  *See
United States v. Stachowiak*, No. 18CR2961SRNKMM, 2019 WL 2560519, at *4 (D.
Minn. June 21, 2019).  Here, the March 2019 Affidavit contains the requisite
certification.  Moreover, given that the Court has found sufficient probable cause for the
Fourth Amendment purposes, the Court also finds that the certification requirements have
also been necessarily met.

### III.    ABARI'S SECOND MOTION FOR A *FRANKS* HEARING (DKT. 104)

In his second motion for *Franks* hearing, Defendant Abari requests a *Franks*

hearing to demonstrate that Minneapolis Police Officer Brandon Noble knowingly and

intentionally, or with reckless disregard for the truth, included a false statement in the

warrant affidavit, and without the false statement, the affidavit would not have

established probable cause.  (Dkt. 104 at 1.)  While the motion refers to an April 14, 2019

search warrant affidavit, the Court assumes that Abari is requesting a *Franks* hearing with

respect to the April 12, 2019 Search Warrant (April 2019 Search Warrant), which was

executed on April 14, 2019.  (*See* Gov't Ex. 8.)  Abari asserts that a *Franks* hearing is

necessary because the supporting affidavit does not sufficiently set forth the track record

of the informant and because the information provided was not corroborated.  (Dkt. 104

at 2.)  Abari believes that the informant is one of his co-defendants and one of the

individuals in the residence arrested as part of the execution of the April 2019 Search

Warrant of the Minneapolis residence, as listed in the Superseding Indictment.  (Dkt. 104

at 2.)  As far as this Court can discern, the portion of the April 12, 2019 Search Warrant

Affidavit ("April 2019 Affidavit") at issue is as follows:

> In this capacity your affiant has been working with a Confidential Reliable
> Informant (CRI.)  This CRI has worked with Law Enforcement in the past
> and has provided names and addresses to your affiant of suspects involved
> in distribution of narcotics and prohibited persons in possession of firearms
> in the twin cities metro area.  The information provided by the CRI has been
> independently-corroborated by your affiant, as well as other local and federal
> law enforcement officers and has been found to be true and correct.
>
> Within the past 72 hours, your affiant received information from the
> aforementioned Confidential Reliable Informant (CRI) stating that the CRI
> was inside XXXX in Minneapolis and observed a person known to the CRI

41

as, "B" in possession of a handgun and a large amount of heroin.  The CRI also stated that "B" sells heroin and that he is staying at XXXXX Ave S.  The CRI described "B" as a large heavy set black male with a shaved head in his middle 30's. The CRI also informed me that "B" uses the cell phone number, 612-458-XXXX.

Your affiant requested the assistance of Hennepin County Criminal Information Sharing and Analysis (CISA) to identify the individual known to the CRI as, "B."  Your affiant provided CISA with the phone number that was given by the CRI for the individual known to the CRI as, "B" to check Hennepin County Jail records for more information.  Through these records and phone number, CISA was able to possibly identify "B" as, Anthony Akeum Abari DOB XX/XX/XX.

Your affiant showed a picture from Hennepin County Jail Records of Anthony Akeum Abari . . . to the CRI with the name removed.  This CRI confirmed that this picture of Anthony Akeum Abari . . . is the person the CRI knows as, "B," and is the person that the CRI knows to be in possession of a handgun and a large amount of heroin at XXXX in Minneapolis.

(Gov't Ex. 8 at 2.)

The Court finds that Abari's motion fails because he made no offer of proof that the alleged omissions were intentionally or recklessly made.  *See United States v. Crissler*, 539 F.3d 831, 833-34 (8th Cir. 2008).  There is no assertion that Officer Nobles has ever omitted information related to the informant's track record of reliability in the past that would bear on the CRI's credibility and Abari points to no authority that requires an affiant to set forth all of the past cases in which an informant has accurately or otherwise provided information to law enforcement.  Moreover, any assertion related to the CRI's past reliability is irrelevant given that their credibility can be established even by corroborating only parts of an informant's information.  *See Dennis*, 625 F.2d at 791 ("The credibility of an informant may be established by corroboration . . . of only parts of an informant's story.").  Here, as set forth above in the excerpt from the April

2019 Affidavit, Officer Nobles sets forth that he corroborated parts of the CRI's information by linking the phone number provided by the CRI to Abari using Hennepin County Jail records and then confirming Abari's identity with the CRI by showing him a picture from those same records. (Gov't Ex. 8.)

In his subsequent memorandum of law in support of the Motion for a *Franks* hearing, Abari again appears to be focused on challenging the January 24, 2018 Search Warrant for Apartment 110 on the basis that a state criminal complaint issued after the execution of the search warrant falsely asserts that Abari was the subject of the search warrant the apartment. (Dkt. 156 at 5-6.) However, the Court has already addressed this issue in a previous Report and Recommendation and will not again revisit this issue. (Dkt. 110 at 13 n.6.)

For all of these reasons, the Court finds that Abari's motion for a *Franks* hearing should be denied.

## IV. DEFENDANT KEVIN GREEN'S MOTION TO SUPPRESS THE ARREST OF MR. GREEN ON JULY 8, 2019 (DKT. 172)

Defendant Green filed a motion seeking the suppression of all evidence through his allegedly illegal arrest on July 8, 2019, on the grounds that the Government did not have a warrant for his arrest and thus violated his constitutional rights. (Dkt. 172.) On February 6, 2020, the Court issued an Order setting forth the briefing deadlines and requiring the parties to notify the Court "in their respective supporting memoranda whether a hearing with witnesses is necessary." (Dkt. 173 at 2.) Neither party sought a hearing on this Motion.

Green concedes that peace officers are authorized to arrest a person for a felony without first obtaining an arrest warrant whenever they have probable cause to believe that a felony had been committed and that the person to be arrested had committed it. (Dkt. 175 at 2.)  However, according to Green, the Criminal Complaint (Dkt. 175-1) authorizing his detention, "is devoid of any probable cause for the arrest of Mr. Green and doesn't derive from the latter search of the Burnsville residence." (*Id.*)  The Court is only aware of the July 8, 2017 Search of the Burnsville Residence, prior to the July 10, 2019 Criminal Complaint at issue.

The statement of probable cause in the Criminal Complaint is based on the execution of the July 8, 2019 Search Warrant at the Burnsville Residence, which Officer Schmitt stated in the affidavit in support of the Criminal Complaint was executed at 11:30 a.m. (Dkt. 175-1 at 2.)  Officer Schmitt maintained that through the investigation it was learned that Green lives or frequently stayed at the Burnsville Residence, and left the residence prior to the execution of the search warrant. (*Id.*)  Officer Schmitt asserted that Green was stopped a distance from the Burnsville Residence and a large amount of cash was seized from his person. (*Id.*)  During the search of the Burnsville Residence, narcotics, drug trafficking instruments and paraphernalia, a large amount of cash (over $196,000) and documents in the name of Green were found. (*Id.*)  Green contends that his arrest took place before the time stamp on the search warrant and thus, the probable cause offered by Officer Schmitt is doubtful. (Dkt. 175 at 2-3.)  Indeed, the time stamp for the judge's signature of the search warrant was 11:56 a.m.  However, Green ignores the search warrant inventory signed by a Hennepin County District Judge on the same

day the search warrant for the Burnsville Residence was executed, which provides that

the search warrant was executed at 1:30 p.m. on July 8, 2019. (Gov't Ex. 7.) Moreover,

as set forth above, a camera still shot of Green being taken into custody on July 8, 2019 is

time stamped 18:35 Zulu, which is the equivalent of 1:35 p.m., which is consistent with

the search warrant inventory time issued the same day. (Dkt. 168 at 17.) Based on the

evidence before the Court, it concludes that the 11:30 execution date set forth in the

affidavit in support of the Criminal Complaint is at most a typographical error that does

not compromise the probable cause finding, given that Green is not contesting that

officers did not find the evidence of narcotics activity associated with him at the

Burnsville Residence. *See United States v. Allen*, 667 F. App'x 568, 569 (8th Cir. 2016),

*as corrected* (July 12, 2016) (citing *United States v. Solomon*, 432 F.3d 824, 829 (8th Cir.

2005)) (citation omitted) ("In addition, a date error in the warrant affidavit was an

inconsequential typographical error, and the file-stamp date of the warrant (a day after its

actual execution) did not compromise the probable-cause finding.").

    "In assessing the question of probable cause in this case, we consider whether the

facts and circumstances are sufficient 'to warrant a man of reasonable caution in the

belief that' [the defendant] was involved in the commission of a crime." *United States v.

Chauncey*, 420 F.3d 864, 870 (8th Cir. 2005) (quoting *Brinegar v. United States*, 338

U.S. 160, 175-76 (1949)). Here, the Criminal Complaint adequately sets forth evidence

of Green's involvement with narcotics trafficking given the discovery of narcotics

trafficking at the Burnsville Residence and evidence tying him to the residence. The

Court acknowledges Green's argument that probable cause is deficient because the July

8, 2019 Search Warrant for the Burnsville Residence lacked adequate probable cause, presumably under a fruit of the poisonous tree theory. (Dkt. 175 at 3.) However, for the reasons stated forth in Section I.H., *supra*, the Court finds that the July 8, 2019 Search Warrant was valid. Therefore, Green's motion to suppress evidence regarding his July 8, 2019 arrest should be denied.[9]

## V.    RECOMMENDATION

Based on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT:**

1.    Defendant Kevin Green's Motion to Suppress the Search Warrant at XXXX, Burnsville, MN on July 8, 2019 (Dkts. 89, 166) be **DENIED**.

2.    Defendant Kevin Green's self-styled Amended Information with Respect to Defendant's Motion to Suppress the Warrant of July 8, 2019 (Dkt. 141), to the extent that it seeks suppression of any evidence, be **DENIED**.[10]

3.    Defendant Kevin Green's Motion for Suppression of Evidence Obtained by Means of Electronic Surveillance (Dkts. 99, 158) be **DENIED**.

---

[9]    The Court notes that Green submitted a *pro se* brief in support of this motion. (Dkt. 174.) The Court will not consider this submission because "'[i]t has long been Eighth Circuit policy 'that when a party is represented by counsel, we will not accept pro se briefs for filing.'" *Hunter*, 2016 WL 6915506, at *3 (quoting *Hunter*, 770 F.3d at 746, quoting *Payton*, 918 F.2d at 56 n.2). To the extent that Green seeks relief or seeks to make argument in this case, it should be through his capable retained legal counsel.

[10]    The Court notes that the Court granted this motion at the hearing only to the extent that it was serving to complete the record. (Dkt. 151 at 41.)

4.    Anthony Akemu Abari's Second Motion for a *Franks* Hearing (Dkt. 104)

be **DENIED**.

5.    Defendant Kevin Green's Motion to Suppress the Arrest of Mr. Green on

July 8, 2019 (Dkt. 172) be **DENIED**.


DATED: April 27, 2020                    *s/Elizabeth Cowan Wright*
                                         ELIZABETH COWAN WRIGHT
                                         United States Magistrate Judge


## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).