# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

United States of America,

             Plaintiff,

v.

Anthony Akemu Abari,

             Defendants.

Case No. 19-cr-103 (01) MJD/ECW

**MEMORANDUM OPINION
AND ORDER**

---

      Amber M. Brennan and Justin A. Wesley, Assistant United States Attorneys, Counsel for Plaintiff.

      Rick E. Mattox, Counsel for Defendant.

_____

## I.   Procedural History

On April 10, 2019, an Indictment was filed charging Defendant with Felon in Possession of a Firearm and Possession with Intent to Distribute a Controlled Substance.  In May 2019, Defendant filed a motion to suppress statements (Doc. No. 22) and a motion to suppress evidence obtained through search warrants. (Doc. No. 27.)

A hearing was held on Defendant's pretrial motions on June 5, 2019.  As set forth in the transcript, the motion to suppress statements was based on the claim his statements were not voluntary and that he was not read his Miranda rights.  Further, Defendant argued if the motion to suppress evidence from the search warrants was granted, there would be no basis for the statements and should be suppressed on that ground as well. (Doc. No. 42 (Tr. at 21-22).)

With respect to the motion to suppress evidence obtained through search warrants, that motion challenged the search warrant executed on January 24, 2019 at the residence located at 410 6th St. SE, No. 110, Minneapolis, Minnesota. (Gov't Ex. 1.)  Following the hearing, the parties filed supplemental briefs concerning the motions to suppress.  (Doc. Nos. 44, 47.)

On August 13, 2019, a Superseding Indictment was filed that added two charges against Defendant and added two co-defendants, Relondo Hall[1] and Kevin Green.

A Report and Recommendation was filed on August 29, 2019, recommending that this Court deny the motions to suppress. (Doc. No. 54.)

---

[1] On July 30, 2020, Relondo Hall entered into a Plea Agreement, and pled guilty to Count 1 of the Superseding Indictment which charged him with conspiracy to distribute 400 grams or more of mixtures and substances containing a detectable amount of Fentanyl (also detectable amounts of heroin) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.

Defendant filed a motion for reconsideration regarding the Report and Recommendation and filed a motion for a <u>Franks</u> hearing.  (Doc. Nos. 70 and 71). Defendant also filed objections to the Report and Recommendation to this Court. (Doc. No. 72.)

On September 25, 2019, Defendant filed additional pretrial motions for disclosure of grand jury transcripts, for disclosure of informants and cooperating witnesses and another motion for a <u>Franks</u> hearing.  (Doc. Nos. 102, 103 and 104.)

On October 1, 2019, a second Report and Recommendation was issued which addressed Defendant's motion for reconsideration and the first motion for a <u>Franks</u> hearing.  Defendant objected to this Report and Recommendation on October 12, 2019.  (Doc. No. 110.)

In the meantime, the codefendants filed a number of pretrial motions, and prior to the hearing on the pending pretrial motions, Defendant filed an ex parte application for the issuance of subpoenas to multiple persons and a subpoena duces tucem.  (Doc. No. 139.)  The Magistrate Judge granted the motion in part, finding that Defendant had preliminarily established the necessity of Officer Nobles – the affiant for the first search warrant.  (Doc. No. 140.)  The Magistrate Judge denied Defendant's request for documents from the Minneapolis City

Attorney's Office, finding that the request was based on conjecture, and that it appeared Defendant was using the subpoena as a discovery tool. (Id.)

On December 4, 2019, the Magistrate Judge held a hearing on the pending pretrial motions.  At the hearing, the government moved to quash the subpoena of Officer Noble.  (Doc. No. 151 (Tr. at 19).)   The Magistrate Judge granted the motion, finding that Defendant had to first make the required showing for a Franks hearing before allowing Officer Noble to testify, and that Defendant could not use Officer Noble's testimony to make that showing.  The Magistrate Judge further noted that the government was to provide Defendant with additional disclosures, and that Defendant was free to renew his request for a Franks hearing based on those disclosures. (Id. at 26.)  Following the hearing, the parties filed additional briefing.  (Doc. Nos. 156, 160 and 162.)

On April 27, 2020, the Magistrate Judge issued a Report and Recommendation addressing Defendant's second motion for a Franks hearing. (Doc. No. 212).  Defendant has objected to the Report and Recommendation.

## II.    Standard of Review

Pursuant to statute, the Court has conducted a de novo review of the record.  28 U.S.C. § 636(b)(1); Local Rule 72.2(b).

A.   **Objections to Report and Recommendation dated August 29, 2019 addressing Motion to Suppress Evidence Obtained Through Search Warrant (Doc. No. 27) and Motion to Suppress Statements (Doc No. 22).**

Defendant moves to suppress evidence obtained as a result of the execution of a search warrant for 410 6th Street SE, Apt. No. 110, Minneapolis, Minnesota on January 24, 2019 on the basis it is not supported by probable cause because the information included in the search warrant affidavit was stale, vague, and based on generalized and boilerplate language.  He further argues the search exceeded the scope of the warrant and that the search and seizures were without valid consent.  (Doc. No. 27.)  Defendant also moves to suppress statements before and after his arrest, as such statements were made in violation of his rights under the Fifth and Sixth Amendment.  (Doc. No. 22.)

1.   **January 24, 2019 Search Warrant Affidavit**

The application for the search warrant for the target address was supported by the affidavit of Minneapolis Police Officer Brandon Noble.  (Gov't Ex. 1).  In his affidavit, Officer Noble set forth the following facts that he affirmed were true or believed to be true:  that he was conducting a criminal inquiry involving the target address, 410 6th Street SE, and the resident believed to be Relondo Devon Hall for possession and distribution of controlled substances;

that he received information from a confidential informant ("CI") who identified Relondo Hall as a source of supply for cocaine at the target address; the target address is included in a multi-unit apartment complex; the CI provided Officer Noble with the Facebook name used by Hall – Jones Payme Damarquez – and that Hall's nickname is "Spade"; that he checked with the Minneapolis Police CAPRS Legacy Query and determined that Hall was associated with the nickname Spade and that Hall's Minnesota Driver's License information indicated that Hall resembled the description provided by the CI; a search of Hall's Facebook account resulted in multiple photographs of a light skinned black male that matched Hall's Minnesota Driver's License Photo; Hall's Facebook account also included photographs of Hall with large sums of U.S. currency and in one picture an open bag of marijuana; the Facebook account also included videos, including one in which Hall is sitting on a toilet holding a large amount of U.S. currency.

Officer Noble further provided in his affidavit that he received information on January 21, 2019 from an anonymous source from the Tip411 online service – a service which allows citizens to send anonymous tips to report a crime or criminal activity. The tipster stated that someone on the first floor of 410 6th St.

SE is dealing drugs out of their apartment and that the tipster had observed a steady stream of different and questionable looking people at all times of the day at the apartment building and that a guy would let them in, stay 5 to 10 minutes and then leave.  The tipster had observed a group at the building the previous night, who appeared to be in an altered state, and a guy let them into the building one by one and then they left quickly.

On January 22, 2019, Officer Noble received an updated tip from Tip411, in which the tipster provided the apartment number from which the drugs were sold – No. 110.  On that same day, Officer Noble observed on Hall's Facebook page a photograph of Hall laying in a bed with what appeared to be an automatic pistol with a silencer.

Officer Noble further provided in his affidavit that within the last 48 hours, his supervisor, Sergeant Jeff Carter, had observed Hall coming and going from the parking lot entrance located on the north side of the target address.

In the affidavit, Officer Noble further wrote that on January 23, 2019, he requested an entry key from the property manager for the entrance of the building, as well as the key for No. 110.  Officer Noble further provided that the property manager informed him that the current renter for No. 110 - name

redacted – had put the unit up for rent on Airbnb.  Officer Noble checked the

Airbnb website and observed Apt. No. 110 was listed for rent on that site.

Officer Noble further noted that the bathroom floor of Apt. No. 110 included on

the Airbnb website was similar to the bathroom floor portrayed in the video on

Hall's Facebook page.

Officer Noble further noted in his affidavit that Hall has a criminal record;

a prior conviction for burglary second degree and a fifth-degree possession,

controlled substance crime.

Based on the information he had obtained up until that time, Officer Noble

then "contacted K9 Officer Mark Meyer of the Airport Police Department with

the purpose of conducting  a non-intrusive dog sniff of the exterior door of 410

6th St. SE #110.  On 01/23/2019 at approximately 2:00 p.m., a dog sniff of the

exterior door of 410 6th St. SE # 110 was conducted.  Your affiant witnessed

Whinny walk up to the door of Apartment #110, sniff the lower door seam and

sit.  Your affiant is aware that sitting is Whinny's indicator that she detects the

odor of controlled substances."  (Gov't Ex. 1.)

Based on the information contained in Officer Noble's affidavit, the search

warrant was signed by Judge Kristin Siegesmund on January 24, 2019.  The

warrant was executed that same day.

2.   **Motions Hearing**

The Magistrate Judge held a hearing on the Defendant's motions on June 5, 2019.  At that hearing, the government called as a witness Sergeant John Biederman with the Minneapolis SWAT team, who was present when the search warrant was executed on January 24, 2019.  Biederman testified that Officer Noble, who obtained the warrant, requested the assistance of the SWAT team to execute the search, to clear the area first to allow investigators to search the residence.  (Doc. No. 42 (Mot. Hr'g Tr. at 30).)  No other witnesses were called, and the parties agreed to submit post-hearing briefs rather than submit oral arguments on the pending motions.  (Id. at 52.)

In his post-hearing brief, Defendant argued for the first time that "[t]he search warrant lacked probable cause to permit a search of Unit 110 because the affidavit submitted in support of the warrant relied on both anonymous and uncorroborated tips, a reckless disregard for its truth of a minimally described dog sniff on a floor of an apartment building by the University of Minnesota, a reckless disregard for its truth in assuming that Unit 110, a short term rental apartment, was still occupied by Spade, and with bathroom floor speculation by

a Minneapolis police officer."  (Doc. 44 at 2.)

3.    **Report and Recommendation dated August 29, 2019.**

Based on the parties' submissions and the evidence presented at the June 5, 2019 hearing, the Magistrate Judge found there was at least a fair probability that contraband or evidence of a crime would be found at the target address.  (Doc. No. 54 at 5.)  In so finding, the Magistrate Judge noted the information provided by the confidential informant was corroborated by the information obtained from the Minneapolis Police CAPRS Legacy Query database, the Minnesota Driver's License database, Hall's Facebook account and information supplied from the Tip411 website.   The Magistrate Judge also found that Officer Noble corroborated the above information with a K9 unit dog sniff and sightings of Hall by Noble's supervisor, Sergeant Carter, within the last 48 hours.  The Magistrate Judge further found that Officer Noble, upon learning the target address was listed on the Airbnb website, visited the website and determined that the target address was listed and that he observed that pictures of the bathroom on the Airbnb site were similar to the bathroom depicted in the video posted by Hall on Facebook.

The Magistrate Judge further found that to the extent Defendant argues his

10

statements should be suppressed as fruits of the poisonous tree, the motion be denied based on her recommendation that the search warrant was based on probable cause.  To the extent the motion is based on the statements not being voluntary or made in violation of <u>Miranda</u>, the Magistrate Judge found Defendant did not raise these issues in his memorandum, and because it is his burden to make a prima facie showing of such illegality.  Regardless, based on Gov't Ex. 6, Defendant's recorded statement, Defendant was read his <u>Miranda</u> rights and the statement was voluntary.  The Magistrate Judge recommended that both motions to suppress be denied.

In his objections to the August 2019 Report and Recommendation, Defendant raised a challenge to the K-9 unit dog sniff outside the target apartment claiming that the affiant, Officer Noble, was not truthful about the qualifications of the drug dog used, and that the use of a drug dog search of a secured apartment hallway by using a key, the day before the execution of the search warrant, was unconstitutional under <u>Florida v. Jardines</u>, 133 S. Ct. 1409 (2013).

Defendant further objects to the Magistrate Judge's finding of a good faith exception under <u>United States v. Leon</u>, 468 U.S. 897 (19844) to uphold the

warrant and to the finding that even without considering the K-9 dog sniff, the search warrant was sufficiently supported by probable cause.

**B. Report and Recommendation dated October 1, 2019 addressing Defendant's Motion for Reconsideration and for a <u>Franks</u> Hearing (Doc. No. 71)**

In addition to filing objections to the Report and Recommendation, Defendant filed a motion for reconsideration and a motion for a <u>Franks</u> hearing, claiming the affidavit in support of the warrant application included false statements.

In support of his motion for a <u>Franks</u> hearing, Defendant asserts that Officer Noble was not truthful about the qualifications of the K-9 dog in the search warrant affidavit by not including the dog's training record and information that the dog had falsely indicated on boxes touched by the dog's handler, as recognized in a decision issued by Chief Judge Tunheim that addressed a challenge to the dog sniff conducted by the same dog as in this case, Whinny. <u>United States v. Ferguson</u>, 17-cr-204 (JRT/BRT), 2018 WL 582475, at * 2 (D. Minn. Jan. 29, 2018) (finding that because defendant did not dispute that Whinny was certified to detect narcotics, the evidence concerning Whinny's falsing issues was not sufficient to overcome the presumption of reliability that

stems both from Whinny's certification and training and from the totality of the

circumstances surrounding her alert).

Magistrate Judge Wright recommended denial of Defendant's motion for

reconsideration and for a <u>Franks</u> hearing, finding that nothing in the <u>Ferguson</u>

decision suggested that Officer Noble omitted anything material to the finding of

probable cause for the issuance of the January 2019 search warrant.  (Doc No. 110

(R&R at 12).)  Based on the <u>Ferguson</u> decision, the Magistrate Judge found that

the only information before the Court is that Whinny is certified and that her

reliability is above average because she was generally able to find narcotics and

generally did not false alert.  (<u>Id.</u>)  Finally, the <u>Ferguson</u> decision established that

the errors by Whinny's handlers had been resolved.  (<u>Id.</u>)  As a result, Defendant

failed to make the requisite showing that Officer Noble made a reckless omission

as to Whinny's qualifications in the search warrant affidavit. (<u>Id.</u> at 13.)

Defendant also argues that Officer Noble included a false statement in the

state court complaint filed after the January warrant was executed.  In that state

court complaint, he asserted that Defendant was the target of the search warrant,

but the actual target was codefendant Relondo Hall.

The Magistrate Judge noted that Defendant did not make clear how a false

statement in the state court complaint – issued after the warrant was executed –
is relevant to the search warrant.  She therefore found that any incorrect
statement in a subsequent criminal complaint does not bear on the veracity of the
facts contained in the search warrant affidavit.  (Doc. No. 110 (R&R at 13, n.6).)

In his objections to this Report and Recommendations, Defendant argues
for the first time that pictures from Hall's Facebook page and from the Airbnb
website do not support probable cause.  In particular, he refers to the picture of
cash on the bathroom floor, which in and of itself is not incriminating, but Officer
Noble suggests it is evidence of drug dealing.  He further argues there is a video
on Hall's Facebook page in which a firearm is shown, and while Officer Noble
mentions this in the warrant affidavit, he did not include the fact that the
headboard depicted in the video does not match a headboard depicted in the
Airbnb site for the target location.  (Doc. No. 103 at 3.)

### C.    Report and Recommendation dated April 27, 2020 addressing Defendant's Second Motion for <u>Franks</u> Hearing (Doc. No. 104)

Defendant filed a second motion for a <u>Franks</u> hearing, again alleging that
Officer Noble included false statements in his affidavit to support the January
2019 warrant application.  The motion also addresses the affidavit supporting the
search warrant of a residence located at 4115 24th Ave S, Minneapolis, MN,

executed on April 14, 2019. (Gov't Ex. 8.)   In the motion, Defendant mistakenly identifies Officer Noble as the affiant for the April 2019 warrant, but the application for this search warrant was supported by the affidavit of Deputy Jeff Marshall with the Hennepin County Sheriff's Office – not Officer Nobles. (Id.)

In his affidavit, Deputy Marshall stated he had been working with a CRI, who has worked with law enforcement in the past and has provided names and addresses to Marshall of suspects involved in the distribution of narcotics and prohibited persons in possession of firearms, and that the information provided by the CRI has been independently corroborated by Marshall and other local and federal law enforcement officers, and has been found true and correct. (Gov't Ex. 8 at 2.)   Marshall stated within the past 72 hours, he received information from the CRI that the CRI was inside 4115 24th Ave. S. and had observed a person known as "B" to be in possession of a handgun and large amounts of heroin. (Id.) The CRI also told him that B sells heroin and that he is staying at 4115 24th Ave. S.  The CRI described B as a large, heavy-set black male with a shaved head in his mid-30s and provided B's cell phone number. (Id.)

Marshall provided the Hennepin County Criminal Information Sharing and Analysis (CISA) the information from the CRI in an effort to identify B.

Through CISA's records, B was identified as Anthony Akemu Abari. The CRI was then shown a picture of Abari, and the CRI confirmed the individual in the photo was B. (Id.)

Marshall also searched the Minneapolis Police Records Database (PIMS) and determined there was a narcotics complaint for the address 4115 24th Ave. S. from February 2019. PIMS records also showed there were several narcotics and assault calls for the 4115 24th Ave. S. address for the past six months. (Id.)

Marshall also included in the search warrant affidavit Defendant's criminal history, which includes prior controlled substance crimes, felony theft and simple robbery, second degree assault and a prior federal weapons conviction. (Id.)

In challenging the affidavit supporting the warrant, Defendant asserts that 11 people - either residents, visitors or the CRI mentioned in the affidavit - were arrested during the execution of the search warrant and that there is a strong likelihood that the CRI mentioned in the affidavit is a cooperating co-defendant who admitted his own guilt while hoping to provide substantial assistance. Defendant further asserts the CRI (if in fact he is a co-defendant) did not have a track record of supplying reliable information and his assistance was not

corroborated by independent evidence, therefore the statement is fraudulent.

The government responded that these arguments are based on mere speculation and do not meet the threshold for a <u>Franks</u> hearing.  In addition, the government asserts that with respect to the information in the affidavit that Defendant is "currently facing drug and weapons charges for a shooting at the Westin Hotel in downtown Minneapolis" and that Defendant has an active warrant for second degree assault, it has turned over all Rule 16 material, with the exception of photographs of the victim in the second degree assault case and the body camera footage of the officers interacting with the shooting victim. Further, the government asserts it verbally provided information to defense counsel about these two incidents and provided photographs of the shooting investigation and the search warrant detailing the facts of the shooting investigation.  In a footnote, the government asserts it has particularized concerns for the safety of witnesses and victims, as evidenced by multiple shooting investigations.  (Doc. No. 112 at 4 n.1.)

At the December 4, 2019 hearing, Magistrate Judge Wright addressed the <u>Franks</u> issue first by addressing whether Defendant could call Officer Noble to the stand to provide testimony as to his affidavit.  The government argued that

Defendant called Officer Noble in order to demonstrate grounds for the <u>Franks</u> hearing.  The Magistrate Judge agreed, finding no authority to have an officer testify before a showing had been made that the officer included false statements in his affidavit.  (Doc. No. 151 (Hr. Tr. at 24).)  Defendant argued he was seeking information as to what the officer did prior to the search warrant affidavit being completed because there are no police reports for that time period, and if so, then the officer must not have been doing his job.  (<u>Id.</u> at 25.)  The Magistrate Judge quashed the subpoena for Officer Nobles pending additional discovery that would be provided to Defendant.  (<u>Id.</u> at 26.)

Following the hearing on Defendant's motion in December 2019, Defendant submitted an additional brief after it was confirmed there were no police reports prior to the execution of the search warrant in January 2019 and the search executed in April 2019.  Defendant argues he is entitled to a <u>Franks</u> hearing if he makes a substantial showing that information has been omitted from a search warrant affidavit either to intentionally mislead or with reckless disregard for whether the omitted facts would result in a misleading affidavit. Defendant argues the lack of police reports was designed to intentionally deceive, or at the least, is a reckless disregard for whether the omitted acts would

result in a misleading affidavit.  Defendant further argues it is absurd to believe the search applications were prepared from the officers' memories alone.

In the April 27, 2020 Report and Recommendation, Magistrate Judge Wright found that Defendant failed to make the requisite showing for a <u>Franks</u> hearing.  (Doc. No. 212 (R&R at 42).)   With regard to the April 2019 warrant, the Magistrate Judge found that Defendant made no offer of proof that the alleged omissions were intentionally or recklessly made, and that Defendant made no showing that the affiant, Deputy Marshall[2], had ever omitted information related to the informant's track record of reliability in the past that would bear on the CRI's credibility.  In addition, that Magistrate Judge found that Defendant had failed to point to any authority that would require an affiant to set forth all of the past cases in which an informant has accurately or otherwise provided information to law enforcement.

Further, the Magistrate Judge found that the affiant had corroborated parts of the CRI's information by linking the phone number provided by the CRI to Defendant using Hennepin County Jail records and then confirming Defendant's identity with the CRI by showing him a picture from those records.  (<u>Id.</u>)

---

[2]  The Court notes that the Report and Recommendation refers to Office Nobles, but it should have referred to Deputy Marshall, as he was the affiant for the April 2019 warrant.

In his objections to this R&R, Defendant argues that the Magistrate Judge did not recognize that the lack of search warrant investigative reports is a reckless disregard of his due process rights to a search warrant based on probable cause – not the imagination of a law enforcement officer.  Defendant claims the lack of reports proves that statements in the affidavit were false and/or reckless.  For example, there is no report supporting the statement that he is a member of the Gangster Disciples, or a report supporting the statement that he was involved in a hotel robbery, or that he was living at the home that was the subject of the April 2019 search warrant.

Defendant concedes it is his burden to show materiality to be entitled to a Franks hearing, but without knowing the identity of the informants or cooperating witnesses he cannot make that showing.

III.    **De Novo Review of Motions for Franks hearing.**

A.      **Standard**

In Franks v. Delaware, the United States Supreme Court held that

where a defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

Id. 438 U.S. 154, 155-156 (1978).  The "substantiality requirement is not met lightly and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements."  United States v. Gonzalez, 781 F.3d 422, 430 (8th Cir. 2015).

The Eighth Circuit has extended this rule "to allow challenges to affidavits based on alleged deliberate omissions."  United States v. Smith, 581 F.3d 692, 695 (8th Cir. 2009).  "[R]ecklessness may be inferred from the . . . omission of information from an affidavit . . only when the material omitted would have been clearly critical to the finding of probable cause."  Id.  "Mere negligence on the part of law enforcement officers does not satisfy this initial requirement."  United States v. Carpenter, 422 F.3d 738, 745 (8th Cir. 2005).

B.    Arguments

1.    Motion Challenging January 2019 Warrant (Doc. No. 71)

In his first motion for a Franks hearing, Defendant argues he has met the threshold for a Franks hearing, citing to his challenge to the drug dog alert and the inclusion of a false statement in the state court complaint that was issued after the execution of the January 2019 search warrant.

Defendant asserts that in the statement of probable cause supporting the

state court complaint, Officer Noble wrote that Defendant was the target of the January 2019 search, when it is clear that his codefendant was the target, not Defendant.  The Court finds, however, that Defendant has failed to demonstrate how a state court complaint issued after the search warrant affidavit was signed has any relevance to the veracity of the warrant affidavit, as that affidavit never identifies Defendant as the target of the search – rather it clearly identifies Relondo Hall as the target.  See United States v. Lucca, 377 F.3d 927, 932 (8th Cir. 2004) ("While the information that Decker made a false statement to his police chief in an unrelated matter has some bearing on his credibility, it is not sufficient standing alone to justify a Franks hearing on the Lucca warrant.").

Defendant's challenge to the K-9 dog's qualifications was first raised in his post-hearing brief following the June 5, 2019 hearing.  In that brief, Defendant asserted the search warrant lacked probable cause because, *inter alia*, it was based on "a reckless disregard for its truth of a minimally described dog sniff of a floor of an apartment building by the University of Minnesota."  (Doc. No. 44 at 2.) Defendant argues Officer Noble was not truthful about the qualifications of the drug dog in his affidavit by omitting information as to the dog's qualifications. Defendant's only offer of proof with regard to this argument is seemingly based

on the <u>Ferguson</u> decision discussed above.   In that case, the court found that

Whinny, the same dog used in this case, was certified by the United States Police

Canine Association to detect narcotics, including marijuana, cocaine, crack,

heroin, methamphetamine, ecstasy, mushrooms and opium, and had been

consistently certified since 2015.  <u>Ferguson</u>, 2018 WL 582475, at * 2.  The court

further recognized that it "can presume (subject to any conflicting evidence

offered) that [a] dog's alert provides probable cause to search where a bona fide

organization has certified a dog after testing his reliability in a controlled setting .

. . [or] if the dog has recently and successfully completed a training program that

evaluated his proficiency in locating drugs."  <u>Id.</u> (internal citations omitted).  "A

defendant can overcome this presumption by showing the inadequacy of a

certification or training program or that the circumstances surrounding a canine

alert undermined the case for probable cause."  <u>Id.</u>

  With respect to the defendant's challenge to the dog sniff based on

Whinny's false alerts, the court found:

> Ferguson also fails to overcome the presumption of reliability of Whinny's
> alert based on her "false-alert issue."  Meyer testified that Whinny's
> reliability is "above average" because Whinny is generally able to find
> narcotics and not falsely alert, and that her mistakes are "within an
> acceptable tolerance."  While Ferguson pointed to a few issues with false
> alerts and some "falsing issues" that lasted about a month in May of 2016,

Meyer reported that those issues were worked out.  He also noted that the month-long falsing issue was not related to parcels and attributed it to handler error.  Meyer reported that Whinny has not had long-term or chronic falsing issues with parcels. Ferguson's evidence of Whinny's falsing issues is not sufficient to overcome the presumption of reliability that stems both from Whinny's certification and training and from the totality of the circumstances surrounding her alert.

Whinny's positive alert alone would have been enough to establish probable cause for the search warrant. But the issuing judge in this case had more. Meyer's affidavit outlined the observations he had made about the package, which the Court has determined were sufficient to create reasonable suspicion. Thus, Meyer's observations and the dog sniff together provided more than "a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing."

Id. at* 8-9 (internal citations omitted).

As in Ferguson, Defendant has raised no challenges to Whinny's

certification, and this Court can take judicial notice of the finding in Ferguson

that since 2015 Whinny has been certified by the United States Police Canine

Association to detect narcotics, including marijuana, cocaine, crack, heroin,

methamphetamine, ecstasy, mushrooms and opium.  As a result, there is a

presumption that Whinny's alert provided probable cause to search.

Rather than challenge Whinny's certification, Defendant appears to argue

that Officer Noble failed to include in the search warrant affidavit that Whinny

had falsely alerted in the past, and had he provided such information, the state

court judge would not have found probable cause for the warrant. The only evidence in the record as to Whinny's reliability is the <u>Ferguson</u> decision, which in the end found Whinny to be reliable. It is Defendant's burden to demonstrate his right to a <u>Franks</u> hearing through "supporting affidavits or similarly reliable statements." <u>Gonzalez</u>, 781 F.3d at 430. Without other reliable evidence challenging Whinny's certification or reliability, Defendant has not demonstrated that Officer Noble intentionally or recklessly withheld material information that was critical to the determination of probable cause.

Defendant further fails to demonstrate he is entitled to a <u>Franks</u> hearing because the Court can find sufficient probable cause without consideration of the dog sniff. (See Section IV.B. below). Thus, even if the dog sniff evidence is not taken into consideration, the remaining information in the affidavit is sufficient to establish probable cause for the search of the residence.

Defendant also challenges Officer Noble's statements that videos and photos from Hall's Facebook page depicted images that were similar to the photos of Apt. No. 110 on the Airbnb site. Defendant claims that the photo showing Hall lying on a bed with a gun shows a headboard in the background, but that a photo from the Airbnb website shows a different headboard. (Doc.

No. 130 at 3.)  These pictures would be relevant to the finding of probable cause to the issuing judge, because knowing that Hall was not in the same bedroom as the one depicted on the Airbnb website would have cast doubt on whether there was a firearm or that Hall was at the target address.

In response, the government noted that the picture Defendant relies on is actually a photo taken during the execution of the search warrant – not from the Airbnb website.  As a result, Officer Noble could not have compared this photo of the headboard to the Facebook video prior to obtaining the warrant. Regardless, because Hall was seen coming and going from the target address within 48 hours of the warrant, there was still a recent nexus between the target address and Hall.

Defendant also raised a number of arguments in his supplemental memorandum regarding the seizure of a vehicle after the warrant was executed. Other than Defendant's arguments, there is no evidence in the record regarding the seizure of the jeep, but it is clearly irrelevant as to the Franks issue.

Defendant also takes issue with Officer Noble's contradictory statements as to whether he left a copy of the search warrant at the apartment.  Again, there is no evidence in the record concerning this, and has no bearing on whether

Officer Noble withheld information from the affidavit supporting the warrant.

The Court thus finds that Defendant has failed to make the requisite

showing for a <u>Franks</u> hearing with regard to the January 2019 search warrant

affidavit.

> **2.      Second Motion for <u>Franks</u> hearing challenging April 2019 Warrant.  (Doc. No. 104)**

In his second motion for a <u>Franks</u> hearing, Defendant challenges the

statement in the affidavit in support of the April 2019 search warrant for the

residence at 4115 24th Ave. S., Minneapolis as to the CRI's reliability.   Claiming

that the CRI is a cooperating co-defendant, Defendant argues the CRI did not

have a track record of supplying reliable information, nor was the information

corroborated by independent evidence.  (Doc. No. 104 at 2.)

Defendant's assertion that the CRI is a cooperating co-defendant is based

solely on speculation, however, and without supporting affidavits or other

reliable information that the CRI is in fact a cooperating co-defendant with no

track record of supplying law enforcement with reliable information, Defendant

has not demonstrated he is entitled to a <u>Franks</u> hearing.  <u>See</u> <u>Carpenter</u>, 422 F.3d

at 745 (finding defendant cannot demonstrate that law enforcement acted

deliberately or recklessly by relying entirely on his own accusations).

In addition, the credibility of a CRI can be demonstrated through corroboration.  See United States v. Dennis, 625 F.2d 782, 791 (8th Cir. 1980) (finding that an informant's credibility may be established by corroboration of only parts of the informant's story).  Here, Deputy Marshall corroborated parts of the CRI's information by linking the phone number provided by the CRI to Defendant through jail records and then confirming Defendant's identity by showing the CRI photos of Defendant from jail records.

Further, Defendant argues that the government has not provided any discovery regarding the pending charges against Defendant that were listed in the affidavit; for a shooting at the Westin Hotel and the active warrant for a second degree assault charge.  In response, the government asserts it has provided all required discovery as to these charges, with the exception of photographs and video of the alleged victims.[3]

Finally, Defendant argues that the lack of law enforcement reports or notes created prior to the execution of the January and April 2019 search warrants was clearly designed to intentionally deceive, or that the very least is a reckless

---

[3]  At the December 4, 2019 motions hearing, the government noted it has information that Defendant had made credible threats against particular persons involved in this case, which is the primary reason it has not turned over Jencks material as of yet.  (Doc. No. 151 (Hr'g Tr. at 16.)

disregard for whether the omitted facts would result in a misleading affidavit. Defendant has presented no additional evidence to support his theory that law enforcement is intentionally hiding information by asserting no police reports were prepared prior to the affidavit in support of a warrant application.  Further, none of the cases cited in his briefing supports the assertion that lack of police reports alone should be considered favorable to the defense.  See e.g., United States v. Jacobs, 986 F.2d 1231, 1234 (8th Cir. 1993) (finding that failure to include in the affidavit that drug dog did not alert to package was sufficient to warrant a Franks hearing);  United States v. Reivich, 793 F.2d 957, 960 (8th Cir. 1986) (finding that failure to include evidence as to promises made to cooperating witnesses in exchange for their statements against defendant, while reckless, did not warrant a Franks hearing where the information was not clearly critical to the finding of probable cause).

In United States v. Williams, 477 F.3d 554, 558 (8th Cir. 2007), the Eighth Circuit held that a finding that a police officer *may* have omitted information from the search warrant affidavit with a reckless disregard for the truth is legally insufficient to justify a Franks hearing because there must be a finding that the omitted information is material to probable cause.  Id.  In this case, there is only

speculation that Officer Noble or Deputy Marshall omitted information based on the lack of police reports. Without evidence establishing what was omitted, Defendant cannot meet his burden of demonstrating such information is material to probable cause. Accordingly, the Court finds that Defendant has failed to demonstrate he is entitled to a <u>Franks</u> hearing.

## IV.   De Novo Review as to finding of probable cause in the January 2019 affidavit.

Defendant argues the January 2019 search warrant was not supported by probable cause on multiple grounds and further argues the dog sniff was unconstitutional.

### A.   Constitutionality of Dog Sniff.

In his objections to the August 29, 2019 Report and Recommendation and in his motion for reconsideration, Defendant asserted that the dog sniff was not valid under the Fourth Amendment pursuant to <u>Florida v. Jardines</u>, 133 S.Ct. 1409 (2013). In the October 1, 2019 Report and Recommendation, addressing Defendant's motion for reconsideration, the Magistrate Judge noted the "paucity of evidence regarding the dog sniff" and later noted Defendant could, at the upcoming motions hearing on the Superseding Indictment, elicit testimony regarding the details of the dog sniff and to renew his motion to suppress under

<u>Florida v. Jardines</u> in light of his new motion for a <u>Franks</u> hearing.  At the December 4, 2019 hearing, however, no testimony was elicited concerning the dog sniff.

In <u>Jardines</u>, the Court held that using a drug-sniffing dog on a homeowner's front porch to investigate the contents of the home is a search within the meaning of the Fourth Amendment, because the very core of the Fourth Amendment is to protect "the right of man to retreat into his own home and there be free from unreasonable governmental intrusion."  <u>Id.</u> at 1414.  The Court went on to find that the front porch was included within the definition of a home's curtilage – that is part of the home itself and subject to the protections of the Fourth Amendment.  <u>Id.</u>  "This area around the home is 'intimately linked to the home, both physically and psychologically,' and is where 'privacy expectations are most heightened.'"  <u>Id.</u> at 1415.

Defendant argues the area outside the apartment door for Apt. No. 110 falls within the curtilage of the home, and law enforcement therefore needed a warrant to use the drug-sniffing dog outside the apartment door.  Defendant argues that the Eighth Circuit has extended the holding in <u>Jardines</u> to apartment hallways, citing <u>United States v. Davis</u>, 760 F.2d 901 (8th Cir. 2014).  In <u>Davis</u>, the

defendant challenged the dog sniff outside his apartment door.  After the motion

was filed and briefed, but before the court ruled on the motion, the Supreme

Court issued its decision in <u>Jardines</u>.  <u>Id.</u> at 902.  In ruling on the motion, the

district court *assumed without deciding* that <u>Jardines</u> applied, invalidated the

search but denied the motion to suppress, concluding the <u>Leon</u> good faith

exception applied because the officers executed the search prior to <u>Jardines</u> and

reasonably believed a dog sniff at an apartment door was lawful based on the

Eighth Circuit's decision in <u>United States v. Scott</u>, 610 F.3d 1009 (8th Cir. 2010),

<u>cert. denied</u>, 131 S.Ct. 964 (2011).  <u>Id.</u>

On appeal, the Eighth Circuit addressed the narrow issue of whether the

good faith exception applied to the search.  "Like the district court, we will

consider only the good faith issue, *assuming without deciding* that the warrantless

dog sniff outside the door to Apartment 5 violated Davis's Fourth Amendment

rights as construed in <u>Jardines</u>.  <u>Id.</u> at 903 (emphasis added).  Thus, contrary to

Defendant's argument in this case, <u>Davis</u> did not rule on the issue of whether

<u>Jardines</u> applies to a dog sniff outside an apartment door in a common hallway.

In fact, the Eighth Circuit and the Supreme Court have yet to issue a

decision on this particular issue.  In a recent Eighth Circuit decision involving

searches of common areas shared by multiple tenants, the court held that a dog

sniff of the defendant's exterior window, which was accessible only by a private

walkway to his apartment door, was a search under the Fourth Amendment.

United States v Burston, 806 F.3d 1123, 1128 (8th Cir. 2015).  In so deciding, the

court applied four factors to determine whether the area searched was curtilage:

"the proximity of the area claimed to be curtilage to the home, whether the area

is included within an enclosure surrounding the home, the nature of the uses to

which the area is put and the steps taken by the resident to protect the area from

observation by people passing by."  Id. at 1127 (quoting United States v. Dunn,

480 U.S. 294, 301 (1987)).  Because the area searched was in close proximity to the

defendant's apartment, that the defendant made personal use of the area by

setting up a grill, and a bush planted in the area partially covered the window,

the court determined the area searched was curtilage.  Id.  See also, United States

v. Hopkins, 824 F.3d 726, 732 (8th Cir. 2016) (distinguishing cases that involved

common areas, such as a staircase used by both tenants, and common hallways,

such as described in Scott from a private walkway leading to door to townhome).

As set forth in Burston, the determination of whether a dog sniff is a search

that took place in the curtilage of a home requires application of the factors set

forth in the Supreme Court's decision in Dunn.  In this case, there is no evidence

in the record describing the area searched other than it is a common hallway in a

multi-unit apartment building.  Without further evidence, Defendant has not

demonstrated that the area searched met the Dunn factors.  Therefore, on this

record, Defendant has not demonstrated that the dog sniff was unconstitutional.

**B.    Probable Cause Determination.**

"A search warrant is valid under the Fourth Amendment if it is supported

by probable cause.  Probable cause exists when a 'practical, common-sense'

inquiry that considers the totality of the circumstance set forth in the information

before the issuing judge yields a 'fair probability that contraband or evidence of a

crime will be found in a particular place.'"  United States v. Stevens, 530 F.3d 714,

718 (8th Cir. 2008) (quoting Illinois v. Gates, 462 U.S. 213, 218 (1983)).  "An

issuing judge's 'determination of probable cause should be paid great deference

by reviewing courts' and should be upheld if the judgment had a 'substantial

basis for . . . conclud[ing] that a search would uncover evidence of wrongdoing."

Id.

As set forth in Section II (A)(1), the affidavit supporting the January 2019

warrant included information provided by a confidential informant and an

anonymous tipster, whose information was corroborated, at least in part, through the independent investigation of the affiant and through surveillance and a dog sniff.

Defendant argues the warrant is lacking in probable cause because it relied on anonymous and uncorroborated tips from an informant.

"When [an] affidavit is based on information from an informant, the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search.  But an informant's "reliability" and "basis of knowledge" are not "entirely separate and independent requirements to be rigidly exacted in every case."  United States v. Oliver, 950 F.3d 556, 564 (8th Cir. 2020) (internal citations omitted).  The reliability of an informant can be established through independent corroboration.  United States v. Faulkner, 826 F.3d 1139, 1144 (8th Cir. 2016).  Information can be corroborated through an officer's own investigation and by tips received on a police hotline and others about drug related activities at the target address.  See Carpenter, 422 F.3d at 744; see also United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993) ("The core question in assessing probable cause based upon information supplied by an informant is whether the information is reliable.

Information may be sufficiently reliable to support a probable cause finding if the person providing the information has a track record of supplying reliable information, or if it is corroborated by independent evidence.  If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable.)

In this case, the information from the CI was corroborated by Officer Noble's own investigation which included reviewing DMV records, the Minneapolis police database (CAPRS), a court database to determine Hall's criminal history and by viewing Hall's Facebook page.  The information was further corroborated by two anonymous tips from the Tip411 hotline and through surveillance of the target residence within 48 hours of the warrant application.

Defendant argues that no evidence was presented that Hall was the current renter of Apt. No. 110.  It is not a requirement that Hall was the actual renter of the property to establish probable cause that Hall was dealing drugs from the target property.  See United State v. Mazzulla 932 F.3d 1091, 1010-11

(8th Cir. 2019) (recognizing that a person can live at more than one address,

particularly when on the run from the police, and because the search warrant

was looking for drugs, not the defendant, potentially misleading information as

to where a defendant lived is immaterial where there otherwise exists probable

cause for the search of the residence).   Here, Hall was seen coming and going

from the property within 48 hours of the warrant application.  Information from

the CI placed Hall at the apartment, and the pictures and videos posted on Hall's

Facebook page and the pictures for that apartment on the Airbnb website further

establish a connection between Hall and Apt. No. 110.  Hall's connection with the

residence, together with the information from the CI that Hall was dealing drugs

from that location and the information from the anonymous tipster that someone

was dealing drugs from Apt. No. 110, supports a finding that there is "a fair

probability that contraband or evidence of a crime will be found in a particular

place."  Gates, 462 U.S. at 218.

### C.  Good Faith Exception

In addition to finding there was probable cause to support the January

2019 search warrant, the Magistrate Judge further concluded that the good-faith

exception to the exclusionary rule in United States v. Leon, 468 U.S. 897 (1984)

applies in this case.

> Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable. The good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the [issuing judge's] authorization. The good-faith exception does not apply:
>> (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge wholly abandoned his judicial role in issuing the warrant; (3) when the affidavit in support of the warrant is so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*; and (4) when the warrant is so facially deficient that no police officer could reasonably presume the warrant to be valid.

United States v. Houston, 665 F.3d 991, 995 (8th Cir. 2012) (citations omitted).

Defendant argues it was not objectively reasonable for the police officer to present to a judge an affidavit to search a short term rental with stale and vague probable cause that included uncorroborated information obtained from an anonymous source and from Officer Noble's guess that the pictures on Relondo Halls' Facebook page of his sitting on a toilet – which showed the bathroom floor – matched the pictures on the Airbnb website of the target address bathroom floor.  Defendant further argues the Leon exception does not apply when the

affidavit includes false statements about the dog sniff and because the affidavit

was so lacking in indicia of probable cause.

As set forth above, Defendant did not make the required substantial

showing under <u>Franks</u> demonstrating that the affidavit contained a false

statement or omission knowingly or intentionally made or with reckless

disregard for its truth.  Even if the evidence of the dog sniff is discarded, the

warrant was nonetheless supported by probable cause.  There has also been no

showing that the issuing state court judge "wholly abandoned [her] judicial role

in issuing the warrant" and the affidavit was not so lacking in indicia of probable

cause or so facially deficient to render official belief in its existence entirely

unreasonable.

## V.    Appeal of Magistrate Judge Order dated April 27, 2020 (Doc. No. 213)

Defendant moves for an Order directing the Government to disclose the

identity of any informant or cooperating defendants the Government utilized in

the investigation and to make them available for interview to prepare for trial

and to disclose their prior criminal convictions.  Defendant further seeks

disclosure of the entire grand jury transcripts.

The Magistrate Judge, applying applicable law, determined that the CI's

mentioned in the January and April search warrant affidavits would most likely be material to the accused's defense, as it appears they may be an active participant or witness.  (Doc. No. 213 at 8 (citing <u>Devose v. Norris</u>, 53 F.3d 201, 206 (8th Cir. 1995)).  The Magistrate Judge further found that based on allegations of violence and threats by Defendant (<u>see</u> <u>e.g.</u>, Doc. No. 148 at 14, Doc. No. 151 at 16), the Government would not be required to identify any informant or cooperating defendant until fourteen days before trial, which would provide Defendant an adequate opportunity to prepare, while considering the safety of the informants.  (<u>Id.</u> at 11 (citing <u>United States v. Rodriquez</u>, 859 F.3d 1321, 1326 (8th Cir. 1988); <u>United States v. Cree</u>, No. 12-cr-26(4), 2012 WL 6194395, at *5 (D. Minn. Dec. 12, 2012) (finding seven days-notice balanced defendant's rights with the protection of the confidential informants).)

With regard to the motion for disclosure of the grand jury transcripts, the Magistrate Judge found that Defendant had met none of the requirements for such disclosure.  It is long established policy that maintains the secrecy of grand jury proceedings and to compel disclosure, a defendant must show the transcript is needed to avoid a possible injustice and the need for disclosure is greater than the need for continued secrecy.  (Doc. No. 213 at 15 (citing <u>United States v.</u>

Proctor  Gamble Co., 356 U.S. 677, 681 (1958); United States v. Kocher, 978 F.2d 1264 (8th Cir. 1992).)  The Magistrate Judge further found that Defendant must allege a particularized need with support for the records and may not seek them merely as a fishing expedition.  (Id. (citing United States v. Warrant, 16 F.3d 247, 253 (8th Cir. 1994) (bare allegation that the records are necessary to determine if there may be a defect in the grand jury process does not satisfy the "particularized need" requirement), Thomas v. United States, 597 F.2d 656, 657-58 (8th Cir. 1979) (defendant's statement for need of grand jury transcripts was nothing more than a generalized hope he may find some defect in the grand jury proceedings, and that such "fishing expeditions" do not provide sufficient grounds for disclosure prior to or at trial).)

Defendant has appealed this Order.  With respect to his motion for disclosure of informants, Defendant argues the Government's privilege to withhold the identity of informants is easily preserved by providing redacted copies of their statements.  (Doc. No. 224 at 3.)  Defendant further argues the Government's offer to disclose the identities of the informants 14 days before trial is worthless because Defendant has no idea how many informants or witnesses there are or what they may have told law enforcement.  Defendant

argues that disclosure only 14 days before trial is not sufficient time to adequately prepare his defense, given the fact it took several months to track down an individual that gave law enforcement a statement following the January 2019 search.  (Doc. No. 224 at 5.)[4]

With regard to his motion for grand jury transcripts, Defendant argues that because there are no law enforcement reports prior to the search warrants, a review of the grand jury transcripts is necessary to determine the credibility of the informants.  Defendant also reasserts the arguments that Officer Noble omitted information related to the informant's track record to cover up the fact he did not conduct any pre-search investigation.

A.      Standard

The Court must modify or set aside any portion of the Magistrate Judge's Order found to be clearly erroneous or contrary to law.  See 28 U.S.C. § 636(b)(1)(A); Fed. R. Crim. P. 59(a); Local Rule 72.2(a).

Defendant has not demonstrated that the Order dated April 27, 2020 is clearly erroneous or contrary to law.  To the extent any informant will be a

---

[4]  The Court notes that this evidence was not presented to Magistrate Judge Cowan Wright, therefore it will not be considered at this time.

witness at trial, their disclosure is ordered 14 days before trial.  In so finding, the

Magistrate Judge properly balanced Defendant's interests in preparing his

defense against the need to protect witnesses from credible threats.

Defendant argues he has met the requirements for disclosure of informants

and the grand jury transcripts based on his arguments that the search warrants

contained false information and that Officer Noble omitted other information.

However, as set forth in the discussion with respect to his motions for a <u>Franks</u>

hearing, Defendant has not demonstrated that the affidavit supporting either

search warrant included false statements, or that information was omitted that

was material to the finding of probable cause.

**IT IS HEREBY ORDERED:**

1. The Court **ADOPTS** the Report and Recommendation of United States
   Magistrate Judge Elizabeth Cowan Wright filed August 29, 2019 [Doc.
   No. 54]; the Report and Recommendation filed October 1, 2019 [Doc.
   No. 110] and the Report and Recommendation filed April 27, 2020, as it
   applies to Defendant's motion for a <u>Franks</u> hearing [Doc. No. 212}.

2. Defendant's Motion to Suppress Statements [Doc. No. 22] is **DENIED**.

3. Defendant's Motion for Suppression of Unlawful Search [Doc.
   No. 27] is **DENIED**.

4. Defendant's Motions for a <u>Franks</u> Hearing [Doc. Nos. 71 and 104]
   are **DENIED.**

5.  Defendant's Motion for Reconsideration [Doc. No. 70] is
    **DENIED.**

6.  The Order dated April 27, 2020 [Doc. No. 213] granting in part
    and denying part Defendant's Motion for Disclosure is
    **AFFIRMED.**


Dated:  August 14, 2020               __/s Michael J. Davis_____
                                      Michael J. Davis
                                      United States District Court

44