# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

               Plaintiff,

v.

                             **MEMORANDUM OF LAW & ORDER**
                               Criminal File No. 19-00103 (1) (MJD)

ANTHONY AKEMU ABARI,

               Defendant.

Katharine T. Buzicky, Assistant United States Attorney, Counsel for Plaintiff.
Anthony Akemu Abari, pro se.

## I.      INTRODUCTION

This matter is before the Court on Defendant Anthony Akemu Abari's Pro Se Motion to Vacate Under 28 U.S.C. § 2255. The Government has responded and Abari has filed a lengthy reply. To the extent Abari's reply "raise[s] new grounds for relief or present[s] matters that do not relate" to the Government's response, the Court does not consider those arguments. D. Minn. LR 7.1(c)(3)(B).

## II.     BACKGROUND

During 2018 and 2019, Abari and his codefendant Relando Hall conspired to sell fentanyl and heroine supplied to them by codefendant Kevin Green. Abari's current motion challenges the work done on his case by both his trial and

appellate attorneys.  Facts related to certain searches and seizures are relevant to his current motion.

### A.    The January 2019 Search of the Sixth Street Apartment

In late 2018, Minneapolis police were investigating an overdose death of a woman who purchased drugs from Hall.  (Trial Tr. Vol. 1 at 57-58; Trial Tr. Vol. 2 at 199.)  Officer Brandon Noble learned that Hall had been dealing drugs out of an apartment on Sixth Street Southeast in Minneapolis ("the apartment").  In January, 2019, Noble obtained a search warrant for the apartment that authorized the seizure of drugs, firearms, cell phones, and money.  (Trial Tr. Vol. 1 at 60-61; Doc. 697-1 (Search Warr. Appl. (Def. Ex. 1).)  Hall was named as the person believed to be the resident of the apartment.  When officers executed the search warrant, Hall was not there, but Abari was.  As the police entered the apartment, Abari was sitting on the couch talking on the phone.  (Trial. Tr. Vol. 2 at 159-61, 260.)  At officers' command, Abari lay on the ground face-down.  (Id. at 259-60.)  After rolling Abari onto his side, officers found his cell phone and a gun on the floor underneath him.  Subsequent testing revealed Abari's DNA inside the magazine of the gun.  (Trial Tr. Vol. 3 at 238.)  Officers also seized cash,

additional cell phones, and approximately 100 grams of heroin mixed with fentanyl from the kitchen.  (Trial Tr. Vol. 2 at 151-53.)

In a Mirandized interview with law enforcement, Abari admitted he had been at the apartment the two previous nights and had been visiting there for at least a month.  (Gov't Ex. 300.)  He also stated that Hall sometimes stayed at the apartment.  (Id.)  Although Abari denied having any involvement with the drugs found in the apartment, he admitted knowing the gun had been in the apartment for "quite some time now."  (Id.)

**B.     February 2019 Traffic Stop**

In February 2019, Minneapolis police officers stopped the car Abari was driving for having windows that were too darkly tinted.  The stop resulted in a search, which yielded contraband, including fentanyl and a handgun.  (Trial Tr. Vol. 3 at 587, 589, 607.)  Officers also seized another phone from Abari and obtained a warrant to search the phone.  (Id. at 588.)  The phone contained dozens of text messages and calls between Abari and Green, including texts indicating Green was Abari's supplier.

### C.    March and April 2019 Activity

In Mid-March 2019, Abari, Hall, and Green met at a BP gas station in Minneapolis, where Green supplied Abari and Hall with heroin laced with fentanyl in exchange for a gun and some cash.  (Id. at 346-49; Trial Tr. Vol. 4 at 470, 526-28.)  This was the last time the three of them were together in their capacity as coconspirators.  In April 2019, Abari was arrested during the execution of another search warrant and has been in custody ever since.

### D.    The Charges and Pretrial Litigation

Hall, Green, and Abari were charged in a second superseding indictment on a variety of drug and firearm charges.  Abari was charged in four counts of the indictment—three counts of possession with intent to distribute, including conspiracy, and one count of being a felon in possession of a firearm.

Abari's court-appointed counsel, Rick E. Mattox, filed several pretrial motions, including motions to suppress statements and evidence, two motions for Franks hearings, at least one motion for reconsideration of a Magistrate Judge's Report and Recommendation ("R&R"), and objections to the Magistrate Judge's R&Rs recommending denial of his motions.  (Docs. 22, 27, 70, 71, 72, 104, 224.)  All the motions were denied.

E.    **Trial and Sentencing**

Hall pleaded guilty, cooperated with the Government, and testified at the ten-day January 2022 trial of Green and Abari.  The Government also called Officer Noble and Sgt. John Biederman to testify, among other witnesses.  Mattox elicited from Biederman that he incorrectly stated in his police report that Abari was walking from the kitchen to the couch when law enforcement entered the apartment to execute the search warrant.  (Trial Tr. Vol. 8 at 1279.)  Biederman explained that he was one of the last officers into the apartment and believed that was the case based on the way Abari "was laying on the ground" when Biederman saw him.  (Id. at 1294.)  Mattox objected several times during Hall's testimony, many of these objections were sustained, and the Court granted Mattox's request to have two of Hall's statements about Abari stricken from the record.  (See Trial Tr. Vol. 3 at 324, 326, 328, 329, 334, 335, 346, 351, 360, 364, 367, 368; Trial Tr. Vol. 4 at 521, 530, 531, 533, 536.)  The jury found Abari guilty of three out of the four counts for which he was charged.

After trial, the Court granted Mattox's motion to withdraw, appointed attorney Glenn Bruder to represent Abari, and eventually sentenced Abari to 240 months in prison followed by five years supervised release.  (Docs. 499, 563.)

## F.    Appeal

On appeal, Bruder argued the Court erred when it denied Abari's request for a jury instruction on multiple conspiracies; violated Abari's due process rights by ordering he be shackled and handcuffed throughout trial; and abused its discretion by admitting only portions of his January 2019 post-arrest statements. United States v. Abari, 83 F.4th 696 (8th Cir. 2023). The Eighth Circuit rejected all the arguments and affirmed Abari's conviction. Id. at 705.

## III.    DISCUSSION

### A.    Standard for Relief under 28 U.S.C. § 2255

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice. A movant may not raise constitutional issues for the first time on collateral review without establishing both cause for the procedural default and actual prejudice resulting from the error.

United States v. Apfel, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted). Alternatively, a procedural default can be excused if a defendant demonstrates that he is actually innocent.  Bousley v. United States, 523 U.S. 614, 622 (1998).

A petitioner is entitled to an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).

> [A] petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.

Engelen v. United States, 68 F.3d 238, 240 (8th Cir. 1995) (citations omitted).

## B.    Ineffective Assistance of Counsel Standard

To gain relief for ineffective assistance of counsel, Defendant must establish both (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.  The Court "need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice."  Apfel, 97 F.3d at 1076.

7

The ineffective-assistance standard is "a most deferential one" that must be applied "with scrupulous care." Harrington v. Richter, 562 U.S. 86, 105 (2011). It is "all too tempting to second-guess counsel's assistance after conviction or adverse sentence." Id. (citation omitted). The question is "whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Id. (quoting Strickland, 466 U.S. at 690).

### a)    Performance

To show that his counsel's performance was deficient, a defendant must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "An attorney is not incompetent in exercising reasonable professional judgment even when, in hindsight, the decision may have been a mistake." Thomas v. United States, 737 F.3d 1202, 1207 (8th Cir. 2013) (citations omitted). Counsel's performance is deficient if it falls outside of the "wide range of reasonable professional assistance," although there is a strong presumption that counsel's conduct falls within this broad spectrum. Strickland, 466 U.S. at 689; Chambers v. Armontrout, 907 F.2d 825, 828 (8th Cir. 1990) (a deficient

performance is "less competent than the assistance that should be provided by a reasonable attorney under the same circumstances") (citations omitted).

### b) Prejudice

A defendant must show that his attorney's deficient performance actually prejudiced him. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. Speculation about a possible alternative outcome does not satisfy this standard. See Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989) (holding that speculation about what witnesses might have said falls short). The defendant bears the burden to establish a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different." Strickland, 466 U.S. at 694.

### C. Abari's § 2255 Motion to Vacate Sentence

As a basis for the Court to vacate his sentence, Abari asserts the following ten grounds of ineffective assistance of counsel against Mattox and Bruder.[1]

| Ground(s) | Allegations |
|---|---|
| 1 & 5 | Mattox was ineffective at litigating motions to suppress |
| 2 & 9 | Mattox was ineffective for failing to argue Noble and Biederman committed due process violations in affidavits and testimony |

[1] Mattox originally asserted 11 grounds, but conceded ground 8 in his reply brief. (Doc. 697 at 28.)

| 3 | Mattox was ineffective for failing to request exculpatory evidence and to adequately investigate |
| 4 | Mattox was ineffective for failing to "inform, discuss, and advise Abari" about a plea deal offer and a reverse proffer |
| 6 | Mattox was ineffective for failing to argue due process violations related to Hall's "perjured" trial testimony |
| 7 | Mattox was ineffective for failing to argue that Abari had withdrawn from the conspiracy |
| 10 | Mattox and Bruder were ineffective based on cumulative errors |
| 11 | Bruder was ineffective on appeal by failing to challenge certain calculations in the PSR |

### 1.    Grounds 1 and 5: Mattox was Ineffective at Litigating Pretrial Suppression Motions

Abari argues that Mattox was ineffective at arguing pretrial motions to suppress evidence because he focused too much on the warrant for the apartment and not enough on the warrant for Abari's phone that was seized in the traffic stop, which resulted in evidence from the phone being used against him at trial.  (Docs. 656 at 5, 10; 697 at 2-7, 19-22.)

Grounds 1 and 5 are merely disagreements with Mattox over litigation strategy despite that Mattox's motion to suppress challenged "any searches" conducted without valid consent and argued that the seizure and search of his phone exceeded the scope of probable cause.  (Doc. 27 at 1.)  Despite the motion, the suppression hearing and post-briefing focused on the constitutionality of the search of the apartment.  This was a reasonable choice on Mattox's part because

the search of the apartment formed the basis for Counts 2 and 5 of the indictment and contributed significantly to Count 1, the conspiracy charge.  (See Doc. 250 (Second Superseding Indictment).)

Abari argues that since he was a guest in the apartment, law enforcement was not entitled to seize his phone and therefore Mattox's approach was wrong. When a defendant claims that counsel was ineffective by failing to properly litigate a Fourth Amendment claim, "the defendant must prove that the claim is meritorious."  United States v. Luke, 686 F.3d 600, 605 (8th Cir. 2012) (quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)).  Abari's claim is not meritorious.  The warrant authorized seizure of firearms and cell phones on the property, not only property owned by Hall.  (Hr'g Ex. 1; Doc. 697-1.)  Therefore, Abari's status as a guest did not preclude seizure of his gun or cell phone.

Thus, the Court finds that Mattox exercised reasonable professional judgment regarding litigation of pretrial suppression motions.  Thomas, 737 F.3d at 1207.  Abari has not satisfied his burden to establish there is  a "reasonable probability that, but for counsel's unprofessional errors, the result would have been different."  Strickland, 466 U.S. at 694.  Grounds 1 and 5 are without merit.

11

2.     **Grounds 2 and 9: Mattox was Ineffective for Failing to Argue Due Process Violations based on False Statements made by Law Enforcement**

In Ground 2, Abari argues that Mattox should have argued Noble committed "due process violations" in affidavits he prepared in support of the search of the apartment, in support of a state criminal complaint, and in his testimony to the grand jury.  Abari further argues that Biederman committed due process violations when he testified at trial.  (Docs. 656 at 5, 14; 697 at 8.)  He asserts that had Mattox argued the violations, the indictment would have been dismissed, evidence against him would have been suppressed, and the outcome of the case against him would have changed.  (Doc. 656 at 5.)

It appears Abari is arguing that Mattox was ineffective for failing to pursue a <u>Franks</u> claim against Noble because Abari focuses on the supposed false statements in the search warrants.  (Doc. 693 at 15.)  However, Mattox filed two motions for <u>Franks</u> hearings related to Noble.  (Docs. 71, 104.)

Reading Abari's reply generously, Abari admits that Mattox requested <u>Franks</u> hearings, but states that Mattox focused on the wrong affidavit and should have focused on the false information Noble presented in support of an underlying state criminal complaint.  (Doc. 697-1 at 18 (Def. Ex. E (Statement Prob. Cause in Supp. of Compl. in state case stating that a search warrant was

executed on the apartment and that the apartment was Abari's residence)).)

Abari argues that he was prejudiced by this error, that the outcome of the trial

would have been different but for this error because "the pre-trial Franks

Hearing would have impeached Officer Noble from this case and from testifying,

[which] would likely have caused [ ] the dismissal of the superseding

indictment." (Doc. 697 at 12-13.) He states that even if the indictment had not

been dismissed, had Noble been prevented from testifying, the outcome of the

trial would have been different. Despite Abari's argument to the contrary,

Mattox did not commit any "errors so serious that counsel was not functioning

as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland,

466 U.S. at 687. Mattox merely made reasonable litigation decisions and Abari's

speculations about the consequences of those decisions do not satisfy Abari's

burden on this issue.  Sanders, 875 F.2d at 210.

　　　To the extent that Abari is arguing that Mattox should have filed a motion

to dismiss the indictment, the Court finds that Abari has not flagged any

prosecutorial misconduct that was flagrant and "caused substantial prejudice to

the defendant." United States v. Manthei, 979 F.2d 124, 126-27 (8th Cir. 1992)

(quotation omitted).  Without "demonstrable prejudice" or a "substantial threat thereof," dismissal of the indictment would have been improper.  Id. at 127.

In Ground 9, Abari argues that Biederman made a false statement about Abari's location in the apartment in a warrant affidavit and police report.  (Doc. 656 at 14.)  He states, "Mr. Mattox also knew that during suppression of evidence proceedings that similar false statements were made by Biederman.  Later, Mr. Mattox and Abari were able to review the body camera video of Biederman, which shows Biederman telling other officers that Abari had been found sitting in a couch" of the apartment talking on his phone.  (Id.)  He also states that at trial, Biederman acknowledged that the statement in his report was incorrect.  (Id.; Trial Tr. Vol. 8 at 1278-79, 1294.)

Like the Government, the Court is unaware of how Mattox could have used a mistake in Biederman's police report to challenge a search warrant affidavit authored by Noble or to strike Biederman's trial testimony based on that type of mistake.   (See Doc. 693 at 18.)  The "decision not to raise an unwinnable issue . . . does not constitute trial ineffectiveness."  Glass v. Higgins, 959 F.2d 88, 91 (8th Cir. 1992) (quotation omitted).  What Mattox did do was successfully cross-examine Biederman and get him to admit his error.  This was

his job and he demonstrated competent representation. Abari was not

prejudiced by Mattox's actions. Accordingly, Grounds 2 and 9 are without merit.

### 3. Ground 3: Mattox was Ineffective by Failing to Request the Production of Exculpatory Evidence

Abari argues that Mattox did not "investigate and pursue the production

of exculpatory information." (Doc. 656 at 7.) He asserts that DNA testing of

other people should have been conducted on the drugs and gun seized during

the searches discussed above. Abari states that these tests will show DNA and

fingerprints of other people were on the contraband. (Id.; Doc. 697 at 13-17.)

Abari's claims are without merit. First, Mattox filed motions for favorable

evidence, exculpatory evidence, and Giglio information. (Docs. 21, 24, 26.) See

Engelen, 68 F.3d at 240 (a petition can be dismissed without a hearing if the

allegations are contradicted by the record).

Second, when a defendant alleges that his attorney failed to properly

investigate, the issue turns on Strickland prejudice. Palmer v. Clarke, 408 F.3d

423, 444-45 (8th Cir. 2005). To show prejudice, Abari must allege "what, if any,

additional information would have been gleaned" had his attorney or those

under his direction investigated. Id. "General allegations" are insufficient to

satisfy the requirement. Id. Abari's argument fails as a legal matter. The

presence of others' DNA and/or fingerprints does not negate Abari's possession

of drugs or guns, because those items can be possessed jointly.  United States v.

Battle, 774 F.3d 504, 511 (8th Cir. 2014).  Moreover, the evidence of Abari's

possession was overwhelming: (1) Abari's gun was found on the floor

underneath him when police entered the apartment to execute the search

warrant (Doc. 693 at 19 (citing Gov't Exs. 14, 61, 95, 268)); (2) Abari admitted in a

recorded interview that he knew about the firearm (Gov't Ex. 300); and (3) DNA

testing revealed Abari's DNA on a round inside the magazine of the gun (Trial

Tr. Vol. 3 at 238).  The Court finds that on this record, even the presence of

others' DNA or fingerprints would not have changed the outcome of the trial.

Third, Abari states that he gave Mattox "a list of names of potential

witnesses" who would testify that their text conversations with Abari on the

phones seized by the Government were not about drugs.  (Doc. 656 at 8.)  Abari

neither names the witnesses nor provides details about their expected testimony.

This will not suffice.  When a defendant claims his attorney failed to investigate

or call his witnesses, the defendant must identify which "witnesses were

available, how they would have testified, and why such additional evidence

would likely have affected the result" of the trial.  Delgado v. United States, 162

F.3d 981, 983 (8th Cir. 1998).  Mere speculation that an unnamed "witness <u>might</u>

have testified that [Abari] was innocent. . . . is simply inadequate to undermine

confidence in the outcome" of the trial.  <u>Sanders</u>, 875 F.2d at 210.   Thus, Ground

3 is without merit.

> **4.    Ground 4: Mattox Failed to Advise Abari Regarding a Plea Deal or a Reverse Proffer**

Abari argues that in early 2021, Mattox failed "to inform, discuss, and

advise Abari about a plea deal offer" and in 2019 failed to inform Abari about an

invitation to attend a reverse proffer.  (Doc. 656 at 9.)  Abari claims that during a

recorded telephone call, Mattox "informed Abari that the Government made a

plea deal offer, but failed to discuss any details of the offer because the call was

being recorded," and Mattox subsequently failed to provide a written draft of the

plea or advise Abari about "his options, benefits, and consequences."  (<u>Id.</u>)  He

further claims that in 2019, the Government offered a reverse proffer opportunity

and that he told Mattox to arrange the meeting, but that Mattox did not do so.

(<u>Id.</u>)  Abari argues that had he had proper counsel, he would have been able to

consider a plea deal and make a decision about going to trial knowing all his

options, but that Mattox's failure to schedule the reverse proffer or to show him

the draft plea deal robbed him of the opportunity.  (<u>Id.</u>; Doc. 697 at 18.)

The Court does not find Abari credible.  He does not state that he and Mattox further mentioned these offers or even that he ever reminded Mattox to get things done.  Abari has not been shy about voicing his displeasure with Mattox's representation.  For example, he did so in the middle of trial, which was not the first time he discussed his feelings with the Court.  (Trial Tr. Vol. 5 at 868-82.)  He did not mention the plea agreement or the reverse proffer.  In December 2021, Abari wrote a letter to the Court stating that he was documenting Mattox's errors.  (Doc. 401.)  Abari attached an October 2020 letter to Mattox outlining complaints about his representation that does not mention the 2019 reverse proffer meeting.  (Doc. 401-1.)  Accordingly, Abari's own records claiming to document Mattox's errors demonstrate that he was not prejudiced by Mattox's actions.  See Strickland, 466 U.S. at 692.

5.    **Ground 6: Mattox was Ineffective for Failing to Argue Due Process Violations Related to Relando Hall's "Perjured" Trial Testimony**

Abari argues that Mattox knew that Hall made false statements in his proffer and in his change-of-plea hearing, but failed to file a due process claim or request that Hall's testimony be stricken from the record.  (Doc. 656 at 11; Doc. 697 at 23) (list of some of Hall's allegedly false trial statements).)

18

Mattox's duty regarding Hall's testimony was the same as it was regarding Biederman's testimony: a vigorous cross-examination and objections when necessary. Mattox fulfilled his duty: Mattox's cross-examination of Hall takes up 50 pages in the trial transcript. (Trial Tr. Vol. 4 at 473-521.) He made fifteen objections during Hall's direct examination and got two of Hall's incriminating statements about Abari stricken from the record. (Trial Tr. Vol. 3 at 324-68; Trial Tr. Vol. 4 at 521-36.) Thus, Abari has not demonstrated that Mattox's performance was "less competent than the assistance that should be provided by a reasonable attorney under the same circumstances" or that any perceived errors "were so serious as to deprive [him] of . . . a trial whose result is reliable." Chambers, 907 F.2d at 828; Strickland, 466 U.S. at 687. Ground 6 is without merit.

### 6.  Ground 7: Mattox was Ineffective for Failing to Argue that Abari Withdrew from the Conspiracy

Abari argues that Mattox was ineffective for failing to raise the affirmative defense that Abari withdrew from the conspiracy. (Doc. 656 at 12.) He argues that Hall testified that Abari "cut all ties with Green through an assertive conversation they had in March 2019 at a BP gas station." (Id.; Trial Tr. Vol. 4 at 547.) Moreover, Abari was in jail as of April 2019, so he could not have

conspired with his co-defendants for the period of time charged in the

conspiracy count.  He states that had Mattox argued withdrawal, the outcome of

the trial would have been different or at least the quantity of drugs he was

responsible for at sentencing would have been less because he would not have

been responsible for all the drugs and money found in later searches.  (Id.; Doc.

697 at 27-28.)

In affirmative defense cases, the focus of the analysis is on the prejudice

prong of the Strickland analysis and the court must decide "whether the

affirmative defense likely would have succeeded at trial." Hill v. Lockhart, 474

U.S. 52, 59 (1985) (addressing failure to advise client of potential affirmative

defense).  Abari's withdrawal defense would not have succeeded at trial.

Withdrawing from a conspiracy requires taking an affirmative step, either

by going to authorities or communicating withdrawal "in a manner reasonably

calculated to reach . . . co-conspirators." United States v. Jackson, 345 F.3d 638,

648 (8th Cir. 2003).  Mere cessation of activities, alone, does not constitute

withdrawal from a conspiracy. Id.  Likewise, "the souring of a relationship

between a defendant and his coconspirators resulting in an end of the

defendant's business relationship with the conspiracy" is not enough to signal

withdrawal from a conspiracy.  United States v. Ortega, 750 F.3d 1020, 1024 (8th Cir. 2014) (cleaned up).  Incarceration alone does not effectuate withdrawal. United States v. Johnson, 737 F.3d 522, 526 (8th Cir. 2013).  Abari's arguments are based on the type of inadequate actions described above.  Thus, Abari is "liable for the reasonably foreseeable actions taken by coconspirators in furtherance of the conspiracy."  Ortega, 750 F.3d at 1024.  Ground 7 is without merit.

> **7.   Ground 10: Mattox and Bruder were Ineffective because of the Cumulative Effect of a "Multitude of Errors"**

Abari argues the Mattox and Bruder "made a multitude of mistakes and bad choices, which individually do not constitute ineffective assistance, but collectively they do."  (Doc. 656 at 15.)  The Government responded that this claim fails because "a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test."  Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (citing, inter alia, Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990) (rejecting cumulative error as a basis for habeas relief because "each habeas claim must stand or fall on its own").

Abari replied that he was not making a cumulative error argument, but rather was asserting "a multifaceted claim of civil rights violations."  (Doc. 697 at 29.)  Abari fills five pages with errors Mattox allegedly made during his

representation.  (Id. at 29-35.)  He avers that while the Eighth Circuit bars

cumulative error arguments based on claims that cannot stand alone, the Circuit

permits consideration of cumulative errors in cases where the Court first

determines that "the specific action or inaction of counsel does constitute

deficient performance."  (Id. at 34 (citation omitted).)  He states that the Eighth

Circuit requires consideration of the cumulative effect of prosecutorial

misconduct in habeas actions.  (Id. at 35 (citing Graves v. Ault, 614 F.3d 501, 507-

08 (8th Cir. 2010)).)

Abari's arguments are not persuasive.  This Circuit requires consideration

of the cumulative effect of prosecutorial misconduct as but one of three factors to

determine whether misconduct deprived a defendant of a fair trial.  Graves, 614

F.3d at 508.  This is not the situation here mainly because Abari is asserting an

ineffective assistance claim not a prosecutorial misconduct claim.  To the extent

Abari wants the Court to interpret this claim as a prosecutorial misconduct

claim, the Court declines to do so because that would violate LR 7.1(c)(3)(B).

Abari's other citations are likewise unpersuasive.  Therefore, because Abari is

attempting to shoehorn numerous arguments in under the guise of "a

multifaceted claim," the Court finds that Abari merely asserts a non-cognizable "multiple errors" claim.  Ground 10 is without merit.

### 8.    Ground 11: Bruder was Ineffective for Failing to Argue on Appeal Certain Alleged Errors in the PSR

Abari argues that Bruder was ineffective for failing to raise arguments about the PSR's calculation of his offense level and a handgun enhancement. (Doc. 656 at 16; 697 at 35-36.)  While Abari had the right to decide whether to appeal, he did not have the right to decide what points to raise on appeal.  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Review of appellate counsel's performance is "particularly deferential" where, as here, a defendant argues "counsel failed to raise an additional issue on direct appeal." Charboneau v. United States, 702 F.3d 1132, 1136 (8th Cir. 2013). "[A]bsent contrary evidence," a court assumes that when appellate counsel does not raise a claim, it was "an exercise of sound appellate strategy." United States v. Brown, 528 F.3d 1030, 1033 (8th Cir. 2008) (quoting Roe v. Delo, 160 F.3d 416, 418 (8th Cir. 1998)).  To that end, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal. . . ." Jones, 463 U.S. at 751.  Applying these standards, the Court holds that Abari's claim fails. Bruder raised several issues on appeal, but did not raise the ones that Abari now

cites.  In so doing, the Court assumes that the choices Bruder, an experienced

criminal defense lawyer, made were "an exercise of sound appellate strategy."

Brown, 528 F.3d at 1033.  Ground 11 is without merit.

### D.    Abari is not Entitled to an Evidentiary Hearing or Appointment of Counsel

After a thorough review of Abari's claims, the Court finds that "the motion

and the files of the case conclusively show that the prisoner is entitled to no

relief" and therefore, Abari's petition can be dismissed without an evidentiary

hearing.  28 U.S.C. § 2255(b); Engelen, 68 F.3d at 240.  It follows that appointment

of counsel is not required.

### E.    No Certificate of Appealability Shall Issue

Because the basis upon which the Court dismisses is not fairly debatable, a

certificate of appealability ("COA") will not issue in this matter.  See 28 U.S.C.

§ 2253(c)(2) (defendant is entitled to a COA "only if [he] has made a substantial

showing of the denial of a constitutional right"); Slack v. McDaniel, 529 U.S. 473,

478 (2000) (a COA must issue if "jurists of reason would find it debatable

whether the petition states a valid claim of the denial of a constitutional right").

Accordingly, the Court will not issue a certificate of appealability.

IV.    **ORDER**

Based upon the files, records, and proceedings herein**, IT IS HEREBY**

**ORDERED**:

1. Defendant Anthony Akemu Abari's Pro Se Motion to Vacate Under 28

   U.S.C. § 2255 **[Doc. 656]** is **DENIED**;

2. Defendant Anthony Akemu Abari's Pro Se Motion Requesting

   Evidentiary Hearing **[Doc. 657]** is **DENIED**;

3. Defendant Anthony Akemu Abari's Pro Se Motion to Appoint Counsel

   **[Doc. 658]** is **DENIED as moot**; and

4. No certificate of Appealability shall issue.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  October 27, 2025                    s/Michael J. Davis
                                            Michael J. Davis
                                            United States District Court